105    91
f105   228

STATE OF MAINE, By Information, *vs.* AMOS K. BUTLER.

Somerset.    Opinion January 6, 1909.

*Legislative Power.    Same Cannot be Delegated.    Public Office.    Same can be Estab-
lished only by Legislature.    Special Attorney for the State.    Statute Authorizing
Governor to Create such Office Unconstitutional.    Legislative Act Held
Unconstitutional, When.    Constitution of Maine, Article III,
sections 1, 2; Article IV, par. 1, section 1.    Statute, 1905,
chapter 92, section 8.*

1.  The entire legislative power of the State is by the constitution vested exclusively in the legislature, and no part of that power can be transferred or delegated by the legislature to either of the other departments of the government.

2.  Only the legislature can establish a public office (other than a constitutional office) as an instrumentality of government.    Whether the establishment of such office is necessary or expedient, its duties, its powers, its beginning, its duration, its tenure, are all questions for the legislature to determine and be responsible to the people for their correct determination.

3.  An office of special attorney for the State in any county to have full charge and control of all prosecutions in the county relating to the law against the manufacture and sale of intoxicating liquors, would be a public office with governmental functions and could be established only by the legislature.

4.  Section 8 of chapter 92 of the Public Laws of 1905, enacting that "The governor may, after notice to and opportunity for the attorney for the state for any county to show cause why the same should not be done, create the office of special attorney for the state in such county and appoint an attorney to perform the duties thereof" is unconstitutional and without any force of law for the reason that the creation of the office is left to the discretion of the governor contrary to the constitution.

5.  While an act of the legislature should not be held unconstitutional except in cases where the conflict between the legislative act and the constitution is clear and irreconcilable by any reasonable interpretation, yet when there is such a conflict as in this case, the court must declare the act void, for the duty of the court to maintain the constitution as the fundamental law of the State is imperative and unceasing.

On report.    Judgment of ouster.

An information in the nature of quo warranto filed by Hannibal E. Hamlin in his capacity as Attorney General of the State, for and in the name of the State but at and by the relation of Thomas J. Young who was County Attorney for the County of Somerset,

against the defendant, Amos K. Butler, who had been appointed "Special Attorney for the State" in said county, to act in all matters relating to the enforcement of the laws against the manufacture and sale of intoxicating liquors, and was acting in such matters.

The Information is as follows:

"State of Maine.

"Somerset, ss :—

"To the Supreme Judicial Court, or any Justice thereof:—

———

"State of Maine By Information *vs.* Amos K. Butler

———

"Be it remembered that on the twelfth day of February, A. D., 1908, Hannibal E. Hamlin, Attorney General of the State of Maine for and in the name of the State of Maine but at and by the relation of Thomas J. Young of Solon, Somerset county, State of Maine, comes into court and files this information against Amos K. Butler of Skowhegan, Somerset county, State of Maine.

"And thereupon the said Attorney General informing shows and gives this court to understand as the claim of said relator, as follows, viz :

"(1) That said Thomas J. Young, the relator, who served the said county of Somerset as its lawful County Attorney for the two successive years expiring on the thirty-first day of December, A. D. 1906, was at the State election held on the second Monday of September A. D. 1906, duly and legally elected as County Attorney of said Somerset county, that he duly qualified as County Attorney as aforesaid on the nineteenth day of November A. D. 1906, and became in all respects the lawful County Attorney for said Somerset county for the term beginning the first day of January A. D. 1907 and expiring on the thirty-first day of December 1908, that he duly entered upon the discharge of his duties as said County Attorney on the first day of January A. D. 1907 for his said present term, and that he ever since has held, and now holds the office of said County Attorney except in so far as he may have been ousted in the

performance of his duties thereof by the said Amos K. Butler as hereinafter set forth.

"(2) That since said Thomas J. Young has been County Attorney, as aforesaid it has been and still is his duty as such official to act as attorney for the State in said Somerset county in all cases in which the said State or county is interested including the violations of the laws of said State against the manufacture and sale of intoxicating liquors.

"(3) That the said Amos K. Butler claiming to act as "Special Attorney for the State of Maine in the County of Somerset" under an appointment from the Governor of this State dated the fourth day of January A. D. 1908, (the validity of which said appointment is at the instance of said relator questioned and denied) at the December term of the Supreme Judicial Court begun and holden at Skowhegan within and for the county of Somerset on the fourth Tuesday of December 1907, to wit: On the eighth day of January A. D. 1908 at said Skowhegan, did assume and exercise and from thence continually afterwards to the time of the exhibiting of this information has so assumed and exercised and still does exercise without legal authority or right, the office of the Attorney of the State of Maine for said county of Somerset, to wit, the said office of County Attorney for said county of Somerset in that he then and there assumed and exercised the same powers vested in the said Thomas J. Young as County Attorney for said county of Somerset in all prosecutions relating to the law against the manufacture and sale of intoxicating liquors, and then and there assumed and held full charge and control thereof, and now exercises said powers and has and holds full charge and control of said prosecutions and claims the right and privilege so to do, and that he the said Butler as aforesaid then and there at said term of said court conducted the prosecution relating to the law against the manufacture and sale of intoxicating liquors, and then and there had full charge and control against the written protest and objection thereto then and there filed in said court by said relator, the said Thomas J. Young, as County Attorney for the said county of Somerset aforesaid, and for and during all the time, at and from said eighth day of January to the commence-

ment of this proceeding, has there claimed and still does there claim without legal authority or right whatsoever to act as the Attorney of the State for the county of Somerset in all prosecutions relating to the law against the manufacture and sale of intoxicating liquors and to have, hold and exercise full charge and control thereof, and to have, use and enjoy all the liberties, privileges and powers belonging and appertaining to said County Attorney for said county of Somerset in all prosecutions relating to the law against the manufacture and sale of intoxicating liquors, which said office, liberties and powers to the extent aforesaid, he, the said Amos K. Butler, for and during the time at and from said eighth day of January to the commencement of this proceeding has usurped and does ursurp, preventing the said Thomas J. Young from performing all the duties of his said office as County Attorney for the county of Somerset.

"(4)    That there may be, therefore two officers of the law claiming the same rights and powers before the grand jury for the county of Somerset and in the courts for said county of Somerset.

"(5)    That the interests of the State require in all the premises that the title of said Amos K. Butler as "Special Attorney for the . State of Maine in the county of Somerset" as aforesaid shall be fully passed upon and determined by proper tribunal under the laws of the land.

"Whereupon the said Attorney General prays the consideration of this honorable court in the premises and that due process of law may be awarded against the said Amos K. Butler in this behalf, to make him answer to the State of Maine and show by what warrant he claims to have, use and enjoy his said office as aforesaid, and that his title, right and powers to his office as aforesaid be considered by the court and that they either be confirmed if valid, or a judgment of this court may be rendered against the said Amos K. Butler directing him not in any manner to intermeddle or concern himself in and about the holding of or exercising his said office, or to intermeddle or concern himself in and with the rights, powers and duties in any way belonging to in whole or in part the said office of the County Attorney for the county of Somerset as aforesaid,

and for such further and other action in all the premises as may seem to the court meet and proper.

"Dated this twelfth day of February, A. D. 1908.

"HANNIBAL E. HAMLIN,

Attorney General.

"THOMAS J. YOUNG,

"Relator."

"STATE OF MAINE.

"Somerset, ss.                                        February 12, A. D. 1908.

"Subscribed and sworn to by the above named Thomas J. Young, relator.

"Before me,

"AUGUSTINE SIMMONS,

"Justice of the Peace."

The defendant filed an answer alleging among other things, that he was acting in matters in said county relating to the enforcement of the laws against the manufacture and sale of intoxicating liquors, under and by virtue of his appointment, commission and qualification under the provisions of the Public Laws of 1905, chapter 92, section 8.

The matter came on for hearing at the March term, 1908, Supreme Judicial Court, in said county, and after certain admissions had been made, the case was "reported to the Law Court to render such judgment as the law may require."

*Augustine Simmons,* for Thomas J. Young, County Attorney.

*Arthur S. Littlefield,* for Amos K. Butler, Special Attorney.

SITTING: EMERY, C. J., WHITEHOUSE, PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

EMERY, C. J.   We think the validity of the respondent's claim to exercise the governmental function of public prosecutor in Somerset county will be best determined by looking straight at the language of the constitution and of the statute and at established principles, and by freely allowing them their full, natural effect.

The people of Maine, in organizing their government as a State, vested the legislative power of the government in a body "to be styled the Legislature of Maine," (Art. IV. Par. 1. Sec. 1.) and did not confer any such power on any other person or body, and did not authorize the legislature to do so. It follows that the legislature alone can exercise the legislative power and alone is responsible for its wise exercise, and hence can transfer neither any of the power nor any of the responsibility to any other department or person. Says Judge Cooley in his Constitutional Limitations (6th Ed.) p. 137: "One of the settled maxims in constitutional law is that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the Constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted, cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust." The proposition needs no other citation of authority, and we do not find it any where doubted.

Further, the people in their constitution expressly divided the powers of the government into three departments, the legislative, executive and judicial, and declared that "no person or persons belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted." Art. III, Secs. 1, 2. Hence not only is the legislature not authorized to transfer any of its legislative power and responsibility, but it is expressly forbidden to transfer any part of them to a person or persons exercising either executive or judicial functions.

Another proposition is undisputed. Only the legislature can establish a public office (other than a constitutional office) as an instrumentality of government. Whether the creation of the office is necessary or expedient, its duties, its powers, its beginning, its

duration, its tenure, are all questions for the legislature to determine and be responsible to the people for their correct determination.

By sec. 8 of chap. 92 of the Public Laws of 1905 the legislature enacted as follows: "The governor may, after notice to and an opportunity for the attorney for the state for any county to show cause why the same should not be done, create to continue during his pleasure the office of special attorney for the state in such county and appoint an attorney to perform the duties thereof. Such appointee shall, under the direction of the governor, have and exercise the same powers now vested in the attorney for the State for such county in all prosecutions relating to the law against the manufacture and sale of intoxicating liquors, and shall have full charge and control thereof; he shall receive such reasonable compensation for services rendered in vacation and term time as the justice presiding at each criminal term in that county shall fix, to be allowed in the bill of costs for that term and paid by the county."

Acting under this section, after sufficient notice to and opportunity for the county attorney of Somerset county to show cause to the contrary and his refusal to do so, the governor on January 4th, 1908 issued to the respondent a commission of the following tenor:

"STATE OF MAINE.

To all who shall see these Presents,

GREETING.

Know Ye, that I, William T. Cobb, Governor of the State of Maine, do hereby create to continue during my pleasure the office of Special Attorney for the State of Maine in the County of Somerset, all as provided by Chapter 92 of the Public Laws of the State of Maine, for the year A. D. 1905, entitled "An act to provide for the better enforcement of the laws against the manufacture and sale of Intoxicating Liquors," and especially as provided for under Section 8 of said Chapter;

And reposing special trust and confidence in the integrity, ability and discretion of Amos K. Butler, of Skowhegan in the said County of Somerset, do hereby constitute and appoint the said Amos K. Butler Special Attorney (to fill the office of Special Attorney as

above created,) for the State of Maine within and for said County of Somerset and I do hereby authorize and empower him to fulfill the duties of said office to which he is herein appointed according to law and to have and to hold the same together with all the powers, privileges, and emoluments thereto of right appertaining unto him, the said Amos K. Butler, during my pleasure as Governor of the State of Maine, if he shall so long behave himself well in said office."

We assume it will not be disputed that the office described in the statute cited is a public office with governmental functions, powers and duties, such as cannot be performed by a mere administrative agency, and hence an office that only the legislature can create. It could not authorize any other person or body of persons to create the office, much less the governor, the head of the executive department. If, therefore, in enacting the statute the legislature did not itself, upon its own judgment and responsibility, create the office, it does not exist and the respondent is not the officer he claims to be.

Construing the statute in question according to the statutory rule for the construction of statutes that "words and phrases shall be construed according to the common meaning of the language," it would seem plain that the legislature did not itself assume to determine whether there should be an office of "Special Attorney for the State" in any county, but left that question to the governor to determine. The language does not seem fairly susceptible of any other interpretation. It is explicit that the governor should "create" the office if it was to exist. When the legislature adjourned there was evidently no such office in existence. The functions and powers of the county attorneys remained with them, and were not transferred to any new office. The office of "Special Attorney for the State" was not to come into existence until the governor was pleased that it should, until he saw fit to create it. He was instructed to "create" the office before appointing an incumbent. This evidently appeared to the governor and his legal advisers the only reasonable interpretation. In his commission to the respondent he first declares that he (not the legislature) "does hereby create" the office, and then goes on to appoint

the respondent to fill the office "as above created," that is, by himself.

The respondent cites cases to the effect that the legislature may provide legislation for future specified contingencies and confer upon the executive or other persons the power to determine when the specified contingency has arisen; also that the legislature may enact a statute not to gó into operation until specified facts or conditions are found to exist, and may empower the governor to decide upon the existence of such facts and conditions. In this case, however, the legislature has not made the existence of the office contingent upon specified facts, or conditions, or contingencies being found by the governor to exist. It leaves the existence or non-existence of the office wholly to the governor's discretion. True, before creating the office, he must invite the county attorney to show cause to the contrary, but he may wholly disregard whatever the county attorney may show as cause, and still create or not create the office at his sole and unlimited discretion. He is not required to find any fact. He need not give any reason or have any reason. The office is to be created or not, at his pleasure. He may even create it for the purpose of blocking the enforcement of the laws by a faithful county attorney. True, no such action by a governor is to be anticipated, and true also that the legislature undoubtedly assumed the governor would use the statute only for the better enforcement of the laws; but he could use it to defeat enforcement and effectually, if the statute be valid. The test is what he could do, not what he probably or undoubtedly would do.

It is this discretion given the governor to create or not create the office that distinguishes this case from those cited by the respondent, and that vitiates the statute. There are cases illustrative of this distinction and vitiation. In *Gilhooly* v. *City of Elizabeth*, 66 N. J. L. 484, 49 At. 1106, the statute provided that "upon the petition of not less than one hundred voters of any city, the governor may in his discretion appoint a commission," to divide the city into wards. The statute was held unconstitutional as being an attempt to delegate legislative power to the governor. The court said; "That this law commits to the governor the determination of

public policy controlling the government of cities does not admit of controversy, as he is given an absolute and unlimited discretion, controlled by no rule, to be exercised in accordance with no facts to be ascertained by him, and upon no principle or terms of expediency declared by the legislature." This language states the principle applicable to the case at bar. In *King* v. *Concordia Ins. Co.*, 140 Mich. 258, 103 N. W. 616, the legislature undertook to empower a commission to frame a standard insurance policy and to make such changes in it from time to time as justice and equity might require. Held void. In *Noel* v. *The People*, 187 Ill. 587, 107 N. W. 500, the legislature undertook to empower a "Board of Pharmacy" to grant in their discretion permits to sell proprietary medicines. Held void as investing the board with an arbitrary discretion. In *Mitchell* v. *State*, 134 Ala. 392, 32 So. 687, the legislature undertook to authorize a board of commissioners to suspend a dispensary for the sale of liquors. Held void. In *State* v. *Rogers*, 71 Ohio St. 203, 73 N. S. 461, the legislature undertook to authorize the Judges of the court of Common Pleas to fix the salaries of county surveyors. Held void on the ground that it had not prescribed any rule, but left the matter to the discretion of the Judges. In *Noel* v. *The People*, 187 Ill. 587, the legislature undertook to transfer to a Pharmacy Board the power to decide what drugs should be sold by druggists. Held void. In *Fogg* v. *Union Bank*, 60 Tenn. 435, it was held that the legislature could not empower trustees of insolvent banks to fix the time for the payment of claims. The foregoing cases are sufficient for illustration and authority. We find no case holding that the legislature may leave any of its legislative powers to be exercised at the discretion of any other person or persons.

The respondent urges as a well settled doctrine that when the intention of the legislature is clearly expressed. in an enactment, the court should give effect to that intention and not defeat it by adhering too rigidly to the letter of the statute or to technical rules for statutory construction, and that in some cases it may give effect to such intention even in direct contravention of the terms of the statute. An essential element in the doctrine invoked is that the

intention should clearly appear in the enactment otherwise its terms cannot be disregarded. In this case, however, the language of the statute clearly indicates an intention to leave the question of creating or not creating the office to the discretion of the governor. "The governor may . . . create to continue during his pleasure the office of Special Attorney," etc. Language could hardly be found more indicative of an intention to transfer the power and responsibility to the governor. A contrary intention, even if it existed, is not expressed in the statute, hence the doctrine cited does not apply to this case. It is not the duty nor right of the court to disregard plain language in order to find some intent contrary to that indicated by the language, even to save a statute from being declared unconstitutional.

The respondent further invokes, as a well settled rule, that if the statute is susceptible of two interpretations one of which will avoid conflict with the constitution, that interpretation should be adopted. We do not see that the words and phrases of this statute, construing them according to the common meaning of the language as required by the statutory rules of construction, can fairly bear the interpretation contended for by the respondent. The words are not technical nor of doubtful meaning. They seem plain and explicit. The governor is to "create" the office as well as fill the office when created. Indeed, the respondent admits that the legislature intended the office to remain in abeyance until the governor should act. This interpretation would not save the statute, since under it the time of the statute going into effect and its duration depend, not on any specified fact, or contingency, or condition, but solely upon the will of the governor. "The result of all the cases on this subject is that the law must be complete in all its terms and provisions when it leaves the legislative branch of the government, and nothing must be left to the judgment of the electors, or other appointee or delegate of the legislature, so that in form and in substance it is a law in all its details in presenti, but which may be left to take effect in futuro, if necessary, upon the ascertainment of any prescribed fact or event." *Dowling* v. *Lancashire Ins. Co.*, 92 Wis. 63, 65 N.

W. 738, 31 L. R. A. 112. In the statute before us the beginning and duration of the office intended to be created were left undetermined. No fact or event was prescribed upon the ascertainment of which the statute was to take effect and the office come into existence. The statute was not to take effect, the office was not to come into existence, until the governor in his discretion should so decree. The constitution forbids the governor exercising any such discretion and forbids the legislature allowing it to him.

All through our consideration of this case we have borne in mind the principle that all reasonable doubts are to be resolved in favor of the constitutionality of a statute, but as said by the Supreme Court of Minnesota in *State* v. *Great Northern Rwy. Co.*, 100 Minn. 445, 111 N. W. 289, "While an act of the legislature should never be held unconstitutional except in cases where the conflict between the statute and the constitution is clear, manifest and irreconcilable by any reasonable construction, yet when it so conflicts with the constitution, courts have no alternative than to declare it invalid ; for the obligation to support the constitution is imperative and unceasing. This is such a case."

It follows that the respondent has no right to exercise any of the functions of public prosecutor, and the State must have judgment of ouster.

*So ordered.*

## Memorandum.

EMERY, C. J. After the foregoing opinion was written, but before the concurrence of all the concurring Justices could be obtained, the term of office of the relator expired. The majority of the Justices, however, hold that the information should not for that reason be dismissed, and that there should nevertheless be a judgment for the State, since not merely the title of the respondent, but the existence of the alleged office itself is in question and is determined by the opinion. *Commonwealth* v. *Swazey*, 133 Mass. 538.