**OPINION OF THE JUSTICES OF THE SUPREME JUDICIAL COURT GIVEN UNDER THE PROVISIONS OF SECTION 3 OF ARTICLE VI OF THE CONSTITUTION.**

Dated July 29, 1975

Answered Aug. 20, 1975

Supreme Judicial Court of Maine

## LETTER PROPOUNDING QUESTIONS

State of Maine

Office of the Governor

Augusta

July 29, 1975

To the Honorable Justices
of the Supreme Judicial Court

Under and by virtue of the authority conferred upon me as Governor by the Constitution of Maine, Article VI, Section 3, and believing that this is a solemn occasion involving the constitutional rights, powers and duties of the Executive, Legislative and Judicial departments of the government,

I, James B. Longley, Governor of Maine, submit the following statement of facts and questions of law and respectfully ask the opinion of the Justices of the Supreme Judicial Court thereon:

## STATEMENT OF FACTS

Title 30, M.R.S.A., Section 451, in part, reads as follows:

"Whenever the Governor and Council, upon complaint and due notice and hearing, shall find that a district attorney has violated any statute or is not performing his duties faithfully and efficiently, they may remove him from office and appoint another attorney in his place . . .."

The Constitution of Maine, Article III, Section 2, provides:

"No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted."

The Constitution of Maine, Article IV, Part Second, Section 7, provides:

"The House of Representatives shall have the sole power of impeachment."

The Constitution of Maine, Article IV, Part Second, Section 6, provides:

"The Senate shall have the sole power to try all impeachments, and when sitting for that purpose shall be on oath or affirmation, and no person shall be convicted without the concurrence of two-thirds of the members present. Their judgment, however, shall not extend farther than to removal from office, and disqualification to hold or enjoy any office of honor, trust or profit under this State. But the party, whether convicted or acquitted, shall nevertheless be liable to indictment, trial, judgment and punishment according to law."

The Constitution of Maine, Article IX, Section 5, provides:

"Every person holding any civil office under this State, may be removed by impeachment, for misdemeanor in office; and every person holding any office, may be removed by the Governor with the advice of the Council, on the address of both branches of the Legislature. But before such address shall pass either House, the causes of removal shall be stated and entered on the journal of the House in which it originated, and a copy thereof served on the person in office, that he may be admitted to a hearing in his defence."

On June 27, 1975, Joseph E. Brennan, Attorney General of the State of Maine, caused a complaint to be delivered to the Governor and to the Executive Council of the State of Maine seeking the removal of Mr. William P. Donahue, District Attorney for Prosecutorial District # 1 on the grounds of alleged violation of statute and improper performance of duty. This complaint requests the Governor and the Council to conduct the hearing to determine said charges and effect the removal of said William P. Donahue from office under Title 30, M.R.S.A. Section 451.

In view of the explicit constitutional prohibition of members of the Executive department from exercising powers properly belonging to the Legislative or Judicial departments in the absence of express constitutional direction, and in view of the explicit constitutional provision placing the sole power of initiating removal by address in the Legislative department; both the Governor and Council have serious doubt of their constitutional power to comply with the request of the Attorney General under Title 30, M.R.S.A., Section 451, and they have no means of resolving this legal question other than through resort to the opinion of the Justices.

Therefore, I, James B. Longley, Governor of Maine, respectfully request an answer to the following question:

## QUESTION OF LAW

Must the Governor, in response to the Attorney General's request, convene the Executive Council and, together with that body, conduct a quasi-judicial hearing to

determine the issue of the accused's removal from office?

> Respectfully submitted,

> s/ James B. Longley
> _____
> James B. Longley, Governor

## ANSWER OF THE JUSTICES

To His Excellency James B. Longley,
Governor of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answer to the question propounded on July 29, 1975.

*QUESTION*: Must the Governor, in response to the Attorney General's request, convene the Executive Council and, together with that body, conduct a quasi-judicial hearing to determine the issue of the accused's removal from office?

*ANSWER*: We answer in the affirmative.

The Statement of Facts describes action having been commenced by the Attorney General against a District Attorney seeking removal of such District Attorney from office pursuant to 30 M.R.S.A. § 451.

There is in existence a live controversy between the State through its Attorney General and a citizen who has been elected by the people of his prosecutorial district to the office of District Attorney.

If the action of the Attorney General is successful, the consequences of such action to the person whom the Complainant seeks to remove from office are obvious. Not only will a forfeiture of the title and emoluments of office result, but it is reasonable to conclude such person will suffer greatly in his reputation.

We must ask ourselves, ought the question submitted to us for our opinions, which so vitally affects rights of a person who is not before us and cannot in this proceeding be brought before us by any known legal process, be answered in an Advisory Opinion of the Justices?

This question is formulated in the language employed by the Constitution as "Is this a solemn occasion?" [1]

That the question we now pose has caused concern not only in this State but in other states, where similar constitutional provisions exist, is well known. *Opinion of the Justices*, 85 Me. 545, 27 A. 454 (1891); *Opinion of the Justices*, 72 Me. 542, 559 (1881) (Justices Libby and Walton); *Opinion of the Justices*, 125 Me. 529, 539, 133 A. 265 (1926) (Justice Dunn); *Opinion of the Justices*, 5 Met. (Mass.) 596 (1844); *Opinion of the Justices*, 9 Cush. (Mass.) 604 (1852).

An historical review of this particular provision of our Constitution becomes helpful. [2]

It must be remembered that the Constitutional Convention from which this provision emanated in Massachusetts was held in 1780 and was widely discussed in the Massachusetts Constitutional Convention of 1820.

It first appeared in the Constitution of New Hampshire as a result of the Constitutional Convention in New Hampshire held in 1792.

It may be assumed that the participants, or some of them, who were at the Maine Constitutional Convention in 1819–1820, had some familiarity with the doings of

---

[1]. The Justices of the Supreme Judicial Court shall be obligated to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives. Constitution of Maine, Article VI, Sec. 3.

[2]. A provision similar in substance is found in the Constitution of Massachusetts, Chap. 3, Art. 2, and in the Constitution of New Hampshire, Part 2, Art. 74, and in Amendment 12 of the Constitution of Rhode Island.

the Massachusetts Constitutional Convention of 1780, and the New Hampshire Constitutional Convention of 1792.

Perley's Debates reveal that no part of Article VI of the Constitution of Maine was debated at the Constitutional Convention of 1819–1820. Rather it was adopted in toto without debate. Perley's Debates and Journal, Constitutional Convention of Maine 1819–1820 (p. 236).

In contrast, the Massachusetts Constitutional Convention of 1820–1821 not only debated the subject extensively but recommended:

"In the second article of the third chapter it is provided, that each branch of the Legislature, as well as the governor and council, shall have authority to require the opinion of the judges, on important questions of law, and upon solemn occasions. We think this provision ought not to be a part of the constitution; because, *First,* each department

ought to act on its own responsibility. *Second.* Judges may be called on to give opinions on subjects, which may afterwards be drawn into judicial examination before them, by contending parties. *Third.* No opinion ought to be formed and expressed, by any judicial officer, affecting the interest of any citizen, but upon full hearing, according to law. *Fourth.* If the question proposed should be of a public nature, it will be likely to partake of a political character; and it highly concerns the people that judicial officers should not be involved in political or party discussions.

"We, therefore, recommend that this second article should be annulled."

Journal of Debates and Proceedings in the Massachusetts Constitutional Convention, 1820–1821 (1853) (p. 629).

Despite such strong recommendation[3] by the Convention, the provision remains in

3. "The second resolution, that it is inexpedient to retain that article of the constitution which requires the judges of the supreme court to answer questions proposed to them by the governor and council, or either branch of the Legislature, was then read.

"MR. STORY of Salem said that it was exceedingly important that the judiciary department should, in the language of the constitution, be independent of the other departments; and for this purpose, that it should not be in the power of the latter to call in the judges to aid them for any purpose. If they were liable to be called on, there was extreme danger that they would be required to give opinions in cases which should be exclusively of a political character. There were two classes of cases in which the Legislature may demand the opinion of the judges—those of a public and those of a private nature. A question may be proposed in which the whole political rights of the State are involved. It is impossible that there should be an argument, and the individual most interested, will be deprived of a right which is secured to every person by the constitution, that of being heard. Questions of fact and of law may be decided without argument and without a jury. There was no necessity for such a provision. In cases where it is necessary to obtain a judicial decision, the

Legislature may, by resolve, order a suit to be brought to try any question of law or fact, and have it regularly argued. Why then should the great principle be violated by taking away the right of trial by jury? The power of calling on the judges for their opinion, may be resorted to in times of political excitement, with the very view to make them odious, and to effect their removal from office. A better opportunity could not be afforded to an artful demagogue, for effecting the purpose of their removal, than by drawing from them opinions opposed to the strong popular sentiment, and subjecting them to popular odium. It ought not to be in the power of the other departments to involve the judiciary in this manner. As the constitution now stands, the judges are bound to give their opinions if insisted upon, even in a case where private rights are involved, and without the advantage of an argument. However great the talents of the judges, however extensive their learning, they are never safe in deciding without an argument. Some judges of the greatest learning make it a rule, that no opinion which they have given without argument, shall be binding upon themselves, or on others. The greatest judges have sometimes changed their opinion on argument. They ought always to have the aid of the talents of the bar, before pronouncing their opinion. The right of being heard, and the

the Constitution of Massachusetts to this day.[4]

*Opinion of the Justices,* 126 Mass. 557 (1878), contains a most interesting and enlightening history of the provisions of the Constitution of Massachusetts, Chap. 3, Article 2. In that Opinion the Justices referred to the Journal of the Constitutional Convention of 1779 and 1780, at pages 211 and 242, and opined that the participants in the Convention

"evidently had in view the usage of the English Constitution, by which the King, as well as the House of Lords, whether acting in their judicial or in their legislative capacity, had the right to demand the opinions of the twelve judges of England." 126 Mass. at 561.

In *Opinion of the Justices,* 85 Me. 545, 27 A. 454 (1891), there was presented a question similar[5] in its factual framework to that now before us. The Justices were asked.

"Would a removal, by the Governor, of a County Attorney, upon proper charges, due notice and hearing, under . . . section 61 [of chapter 27, of the Revised Statutes], *and the appointment of a proper person to fill his place, be valid?*" (p. 545, 27 A. 454) (Emphasis supplied)

The Justices declined to answer, saying,

"Although the attorney is to be heard upon the charges against him presented to the Governor, he cannot be heard upon the question submitted to us, and we think it inexpedient to prejudice the question before any occasion has arisen calling for its legal determination." (p. 546, 27 A. 454).

The Justices then pointed to,

" . . . the late statute of the State upon the subject of the tenure of office, under which, if the removal of such official be made and another appointed, the legality of the removal can be immediately contested, by proceedings to be instituted before any judge in any county in the State where either party resides, in term time or vacation, . . . ." (p. 546, 27 A. 454)

This, they said, confirmed them in their opinion that the question ought not be answered.

See also *Opinion of the Justices,* 95 Me. 564, 51 A. 224 (1901).

Later in 1926, the Justices were asked to give their opinion in a matter arising out of the proposed removal of a sheriff by the Governor pursuant to Amendment 38 of the Constitution of Maine. There, as here, the rights of an elected official were substantially involved.

Of the nine Justices then on the Court, eight considered there was a "solemn occasion" and did not hesitate to answer the question. Only Justice Dunn (later Chief Justice Dunn) considered the question was one in which "the quality of solemnity is lacking."

Data for the use of the Constitutional Convention. Manual for the Constitutional Convention, 1917 (p. 54).

5. An important dissimilarity in the factual framework was that the inquiry was directed partly to the question of appointing a person to an office. At the time the question was asked there was no vacancy in the office and there would not be a vacancy unless and until the incumbent was removed. Thus as to the appointment, there was no imminent occasion for the Governor to act. The matter was not of live gravity. Rather, it concerned action he might or might not be called upon to take in the future.

practice of arguing all questions has, more than anything else, preserved the uniformity of the common law. He did not know that there was the slightest objection to the proposed amendment. It had the assent of nearly all, in [sic] not all the select committee. "The resolution was agreed to, by a large majority." Journal of Debates and Proceedings in the Massachusetts Constitutional Convention 1820–1821 (1853) (p. 489–490).

4. Another attempt to remove the advisory opinion provision of the Massachusetts Constitution was made at the Constitutional Convention of 1853. This too failed. Massachusetts Commission to Compile Information and

The careful reading of the *Opinion of the Justices,* 85 Me. 545, 27 A. 454 (1891), reveals that the Justices *did not* say that a legal remedy available to a possibly adversely affected party *precludes* the finding of a "solemn occasion" and it does *not say* that possible prejudice to a party not then before the Court limits the constitutional remedy. What the Justices' opinion stands for is that the Justices should decline to answer a question where prejudice might result, when the question is presented *before any occasion has arisen calling for its legal determination.*

In other words, the Justices declined to answer the question as to an appointment at a time when there was no vacancy in office and the Governor was not then (at the time of asking for the opinion) required to act upon any appointment.

The question asked of the Justices in 1891 involved both the removal of the incumbent County Attorney and the appointment of some other person to fill the vacancy thus created. Thus there was in issue the *prospective* title to an office *when at the time the question was asked* there existed no vacancy in such office.

In the instant case, the Governor and Council have before them a complaint seeking removal of a District Attorney which complaint was filed by the Attorney General. The Governor and Council must either act or refuse to act *now.*

The Governor and Council profess substantial doubt as to the constitutionality of the statute pursuant to which they are requested by the Attorney General to act.

As we view it, the situation now before us is unique.

Action has been instituted to remove the District Attorney from his office.

The Governor and Council entertain doubts based on advice given them by competent legal advisors whom the Governor has consulted.

The Governor and Council hear two voices giving them direction.

The first, that of the Constitution, Article IX, Sec. 5, Constitution of Maine, which the Governor could reasonably interpret as saying: You shall with the advice of the Council, remove officers on the address of both branches of the Legislature.

The other, the statute, 30 M.R.S.A. § 451, which says: You shall remove the District Attorney, if after due notice and hearing, you find that he has violated any statute or is not performing his duties faithfully and efficiently.

The Governor is asking us "to which voice shall I listen?"

Ordinarily he would turn to the Attorney General for guidance, but in the instant case the Attorney General is not only a party but the moving force in the matter.

As the Justices of the Supreme Judicial Court of Massachusetts said in *Opinion of the Justices,* 354 Mass. 804, 241 N. E.2d 91 (1968),

"We are strengthened in our belief that we should answer the Governor's question because the Attorney General deems himself disqualified from giving the opinion which usually might be expected from him." (p. 808, 241 N.E.2d p. 93)

The Governor and Council are faced with an important dilemma. They are requested to proceed under the authority of 30 M.R.S.A. § 451.

If that statute is constitutional they have the duty to proceed, and if they do not, they fail to discharge a mandated responsibility.

If they lack power to proceed but do, they violate the Constitution of Maine and their oath of office.

Under these unique circumstances, we feel there is a "solemn occasion" and there is an "important question" and we must

answer. See *Opinion of the Justices*, 96 N.H. 517, 83 A.2d 738 (1950).

We interpret the question to be directed to whether 30 M.R.S.A. § 451 contravenes the "Distribution of Powers" provisions of Article III of the Maine Constitution because the statute requires that: (1) the Executive Department exercise a function of the Judicial Department by conducting a "quasi-judicial" hearing, and (2) the Executive Department undertake the function, established by Article IX, Section 5, of the Constitution as exclusively legislative, of removing a civil officer from office.

We find no such violations of Article III.

The requirement in 30 M.R.S.A. § 451 that the removal proceeding be "upon complaint and due notice and hearing" is calculated to conform to constitutional mandates of procedural due process of law. In this sense the hearing may be labelled "quasi-judicial." However, that the Executive Department is charged with conducting a hearing characterized as "quasi-judicial" because it complies with procedural due process requirements does not transform the Executive Department into

" . . . a court or vest . . . [it] with judicial functions contrary to the requirements of our Constitution as to the separation of powers of government." *Johnson v. Laffoon*, 257 Ky. 156, 77 S. W.2d 345, 350 (1934).

We are further satisfied that the Executive Department in carrying out the duties imposed upon it under 30 M.R.S.A. § 451 is not performing a function rendered exclusively legislative by Section 5 of Article IX of the Constitution.

When the Constitution fixes the tenure of a civil office, it is beyond the power of the Legislature to affect the tenure. Persons holding such constitutional offices, therefore, may be removed only by methods authorized by the Constitution itself. *Laverty v. Cochran*, 132 Neb. 118,

271 N.W. 354 (1937); *Fugate v. Weston*, 156 Va. 107, 157 S.E. 736 (1931). Insofar, then, as Section 5 of Article IX authorizes impeachment or address of the Legislature as methods for the removal of civil officers, these are the exclusive methods for the removal of civil officers whose tenure is constitutionally established.

It does not follow, however, that the same principle governs as to civil offices the tenure of which is fixed by statute. As to such offices it has been held that, in the absence of a constitutional prohibition to the contrary, it is "undisputed" that

"[o]nly the legislature can establish a public office (other than a constitutional office) as an instrumentality of government. Whether the creation of the office is necessary or expedient, its duties, its powers, its beginning, its duration, its tenure, are all questions for the legislature to determine and be responsible to the people for their correct determination." *State v. Butler*, 105 Me. 91, 96, 97, 73 A. 560 (1909).

See also: *Graham v. Roberts*, 200 Mass. 152, 157, 85 N.E. 1009, 1011 (1908), in which Chief Justice Knowlton, quoting Chief Justice Shaw in *Taft v. Adams*, 3 Gray, 127, 130, said

"Where an office is created by law, and one not contemplated, nor its tenure declared by the Constitution, but created by law solely for the public benefit, it may be regulated, limited, enlarged or terminated by law, as public exigency or policy may require."

Also see: *McFeeters v. Parker*, 113 Vt. 139, 30 A.2d 300 (1943).

Section 5 of Article IX does not clearly and expressly mandate impeachment or address of the Legislature as the exclusive methods for the removal of all civil officers. The textual language is not language of restriction or limitation but language of authorization.

Our opinion is that to resort to a process of negative implication to transform such

plain language of enablement into language of limitation would be unjustifiably to extend the true import of Section 5 of Article IX and unnecessarily and undesirably to impose restriction upon the otherwise plenary power of the Legislature to prescribe, as it sees fit, the method for the removal from office of one holding an office for which the Legislature has fixed the tenure.

In 30 M.R.S.A. § 451 the Legislature has seen fit to prescribe the method for removal from an office for which it, and not the Constitution, has prescribed the tenure. The statute, therefore, contravenes neither Section 5 of Article IX nor Article III of the Constitution.

Dated at Portland, Maine, this twentieth day of August, 1975.

Respectfully submitted:

ARMAND A. DUFRESNE, Jr.
RANDOLPH A. WEATHERBEE
CHARLES A. POMEROY
SIDNEY W. WERNICK
JAMES P. ARCHIBALD
THOMAS E. DELAHANTY