E. T. HERIOT, suing on behalf of himself and others similarly situated, *Appellant*, v. THE CITY OF PENSACOLA, a municipal corporation, GEORGE J. ROARK, as City Manager of the said·City, FLORIDA PUBLIC UTILITIES COMPANY, a corporation, GULF POWER COMPANY, a corporation, and SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY, a corporation, *Appellees*.

146 So. 654.

Opinion filed February 27, 1933.

*Philip D. Beall* and *John M. Coe,* for Appellant;

*Jerry J. Sullivan* and *Watson & Pasco & Brown,* for Appellees.

BIRD, Circuit Judge.—The City of Pensacola, in May, 1932, passed and adopted an ordinance known as Revised Tax Ordinance No. 1, under the terms of, which a tax of four per cent. was laid on the purchase of electricity, gas, water and telephone service within the corporate limits of that city, to be calculated upon the gross charges made to consumers for such service and providing a maximum tax of five dollars for each separate service or station and providing that the tax should not extend to telephone service furnished at coin box telephones, and further provided that the dealer should collect the tax from the consumer where not absorbed by the furnisher and imposed a penalty of fine and imprisonment, or both, for violation of the ordinance. It is also provided in the ordinance that the monies derived from the tax shall be used exclusively for the retirement of certain outstanding indebtedness of the City of Pensacola and the interest and when the same is paid that the tax shall then cease.

The appellant, E. T. Heriot, a consumer and taxpayer, sued on behalf of himself and others similarly situated, by bill in the Circuit Court of Escambia County, against the City of Pensacola, George J. Roark as City Manager; Florida Public Utilities Company, a corporation, Gulf Power Company, a corporation, and the Southern Bell Telephone and Telegraph Company, a corporation, sought to restrain the enforcement of the ordinance.

Motion to' dismiss the bill was filed by the City of Pensacola and George J. Roark as City Manager; the cause

coming on 'to be heard before the chancellor, the bill was dismissed. It is from this order dismissing the bill that the appeal is taken.

The assignment of error contains but one ground, i. e.: The Court erred in sustaining the motion to dismiss the bill.

The first question we are to determine is whether the City of Pensacola had power, under its charter, to levy a tax upon the purchase of gas, electricity, water and telephone service payable by the consumer. This is clearly an excise tax, as defined in Amos v. Gunn, 84 Fla. 285, 94 Sou. 615, where it is held:

"An excise tax is one laid on licenses to pursue certain occupation, corporate privileges, or sales or consumption of commodities," and "An excise tax partakes of the nature of a license tax."

The tax here considered is of the same general nature as the gasoline tax now imposed by the State. The authority of the State to impose such a tax is beyond question. Amos v. Gunn, *supra,* Sheip and Co. v. Amos, 130 So. 699, Amos v. Matthews, 126 So. 308.

Section 8 of Article VIII of the Constitution of Florida provides:

"The Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time."

Section 5 of Article IX of the Constitution of Florida provides:

"The Legislature shall authorize the several counties and incorporated cities or towns in the State to assess and impose taxes for county and municipal purposes, and for no other purpose; and all property shall be taxed upon the

principles established for State taxation. But the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits. The Legislature may also provide for levying a special capitation tax, and a tax on licenses * * *."

Under Section 8 of Article IX, the Legislature may grant to cities any power or authority that does not conflict with other provisions of organic law. City of Lakeland v. Amos, 143 So. 744.

In Amos v. Matthews, 99 Fla. 1, 65, 115, 126 So. 308, it is said:

"The Legislature may provide for levying excise taxes either by a direct imposition thereof, or by delegated authority to local offices to levy such tax for a local purpose."

There can be no question therefore that the Legislature could delegate to the City of Pensacola the power to levy the tax in question.

There is no inconsistency in this holding and that the Roach v. Ephren, 87 Fla. 523, 90 So. 609, where it is held that the Legislature may pass an unreasonable law and the Court will not strike it down unless it violates an organic principle; but the Legislature may not delegate to the City the power to pass an unreasonable ordinance.

We now pass to the question as to whether such power has, in fact, been delegated.

Chapter 15,425, Acts of 1931, is the charter of the City of Pensacola, the purpose of which Act, as expressed in the title, among other things, is "granting powers to said City."

Section 1 of said Chapter provides:

"The City of Pensacola, under this Act, shall have and is hereby granted authority, to exercise all powers relating

to the municipal affairs; and no enumeration of powers, in any law, shall be deemed to restrict the general grant of authority, under the general laws of the State, applicable to municipal corporations, hereby conferred.

"The following shall be deemed to be a part of the powers conferred by this Section:

"(1) To levy, assess and collect taxes and to borrow money within the limits prescribed by general law; and to levy and collect special assessments for local improvements."

Section 2 of said Chapter, among other things, provides:

"It is intended that the City of Pensacola shall have, and may exercise all powers which under the Constitution of Florida, it would be competent for this charter to specifically enumerate."

And Section 3 of said Chapter provides:

"All rights, actions, prosecutions and contracts and power and property of every description which were vested in it, are vested in it under the charter herein provided for, as though there had been no change in form of government."

At first glance, it may seem that the phrase "within the limits prescribed by general law," as contained in Subsection 1, is a limitation upon the power to levy, assess and collect taxes as well as upon the power to borrow money, and such is the contention of appellant.

In construing Statutes, it is a cardinal rule that the intent is the vital part. It is the essence of the law. The primary rule of construction is to ascertain and give effect to that intent.

The entire Statute is to be considered in ascertaining the intent. Effect must be given to every part of the Section

and every part of the Statute as a whole. The subject regulated, the purpose designed to be accomplished, and the means adopted should be considered to ascertain the true and lawful legislative intent which alone has the force of law.

Axtell v. Smedley, 59 Fla. 430, 52 So. 710; Tylee v. Hyde, 60 Fla. 389, 52 So. 968; Keefe v. St. Petersburg, 145 So. 175.

The Court will not follow the letter of the Statute when it leads away from the true intent and purpose of the Legislature and to conclusions inconsistent with the general purpose of the Act. Curry v. Lehman, 55 Fla. 847, 47 So. 18.

"In statutory construction legislative intent is the pole star by which we must be guided, and this intent must be given effect even though it may appear to contradict the strict letter of the statute and well-settled canons of construction. No literal interpretation should be given that leads to an unreasonable or ridiculous conclusion or to a purpose not designed by the law makers." State v. Sullivan, 116 So. 255; 95 Fla. 191.

Generally, the rule is that statutes conferring authority to impose taxes' must be strictly construed.

Moseley v. Tiff, 4 Fla. 402; Ex parte Sims, 25 So. 280; 40 Fla. 432.

It is also stated in Ex Parte Sims, supra.:

"Another general rule universally recognized is that delegated corporate powers to municipalities, particularly grants of power that are out of the usual range, and that may result in public burdens, or which in their exercise touch the right to liberty or property or any common law right of the citizens must be strictly construed and when in such construction there is any ambiguity or doubt as to

the extent of the power it is to be determined in favor of the State or general public, and against the State's grantees."

What the Legislature intended, in Sub-section 1, of Chapter 15425, Acts of 1931, must be determined from the purpose of the Act and the language used. Clearly, the purpose of the Act was to grant, rather than restrict, powers to the City of Pensacola and to vest the City with a charter free from the provisions of the general law. The wording of the Sub-section indicates that the words "within the limits prescribed by general law" apply to the borrowing of money and not to the levying, assessing and collection of taxes. If it had been the intention of the Act to limit also the right to levy, assess and collect taxes, we think that the word "to" before the word "borrow" would not have been inserted. In giving the sentence an ordinary construction, consistent with the natural arrangement of the language used, the quoted phrase "within the limits prescribed by general law" limits the power to borrow money, and has no reference to the power to levy, assess and collect taxes. If the Legislature had intended otherwise, why the word "to" before the word "borrow?" Why did not the sentence read "to levy, assess and collect taxes and borrow money, within the limits prescribed by general law?" The word "to" can have no meaning unless it was to break the continuity of power, and separates the power to levy, assess and collect taxes from the power to borrow money. When we consider this phrase with that contained in Section 2, viz.: "It is intended that the City of Pensacola shall have and may exercise all powers which under the Constitution of Florida it is competent for this charter to specifically enumerate," and with the provision of Section 3 of said Act, wherein all power of the then existing charter is reserved, and Chapter 6087, Acts of 1909, which specifically confers power upon the City, to levy licenses

upon privileges, and keeping in mind the purpose of the Act as expressed in the title and drawn from the whole context thereof, to-wit: the granting of power and changing the whole scheme of government far beyond the scope of the general municipal laws. There can be no doubt that the power has been conferred, and the City had power to levy the tax in question.

The tax here imposed is upon the privilege of purchasing the service and commodities set forth in the Ordinance.

Orange State Oil Co. v. Amos, 130 So. 707; City of West Palm Beach v. Amos, 130 So. 710.

It is next contended by appellant that inasmuch as the maximum of Five Dollars is provided for any one consumer, at any one station, it violates the equal protection clause of the Federal Constitution, in that a consumer using less than one hundred and twenty-five dollars of service must pay a straight four per cent. tax, while one using more than one hundred and twenty-five dollars of service would pay less than four per cent. This is no valid objection to the Ordinance. Jackson v. Neff, 64 Fla. 326; 60 So. 360. In that case it was held that a statute imposing a graduating scale of license taxes fixed on automobiles of various horse power, with a maximum tax of one hundred dollars upon automobiles of seventy-one horse power or over, and no additional tax for power over that amount was valid.

The law guarantees to everyone the equal protection of the law, but does not require that the tax of the kind here considered in all instances and under all conditions, should be equal. The taxing authority has wide discretion in imposing license taxes and unless there can be no substantial basis for discrimination and classification and in fixing the amount of licenses so that the discrimination must be regarded as purely arbitrary and unreasonable under every conceivable condition in practical affairs, the Courts will

not interfere. Peninsular Gas. Co. v. State, 68 Fla. 411; 67 So. 165.

Excise taxes are not within the principle of uniformity of rates. Gray v. Central Fla. Lumber Co., 140 So. 320.

The fact that the Ordinance provides that the consumer shall pay the tax where not absorbed by the dealer and provides that the dealer shall make all collections is valid.

Texas Co. v. State, 254 Pac. 1063; 53 A. L. R. 258. Pierce Oil Co. v. Hopkins, 264 U. S. 137; 68 L. E. 593; Standard Oil Co. v. Brodie, 239 S. W. 753.

In actual practice, the consumer is generally required to pay the tax when not specifically provided otherwise. The most common form of an excise tax of this kind is the gasoline tax; generally, and in this State, the tax is paid by the first dealer and ultimately passed on to the consumer. To hold the Ordinance valid if it required the dealer to pay the tax and permitted him to pass it on to the consumer, but void because it required the consumer to pay in the first instance, would be to hold that the taxing authority can do indirectly what it cannot do directly.

The Ordinance is reasonable since the tax is levied upon the consumption of commodities which in their distribution are necessarily transported by wires upon, and pipes under, the public ways of the city. The Court may act upon the reasonableness and legality of the Ordinance, but not its wisdom or folly.

The next attack made upon the Ordinance is that the tax is inoperative and void because the consumer is required to pay, and is a tax upon the right to acquire and hold property given to citizens under Section 1 of the Bill of Rights, which provides that all men have certain inalienable rights, among which are acquiring, possessing and protecting property. This contention must also fail. Section 1 of the Bill of Rights does not mean that men should not contribute

to the support of the government under which they live by the payment of taxes upon the property acquired or possessed by them. This is but an attribute to the ownership of property. However, the tax here involved is not a tax upon the right of acquiring or possessing property, but is upon the transaction.

It is apparent that the decree appealed from is correct; it is therefore affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.