CITY OF PENSACOLA v. EDWARD W. LAWRENCE.

171 So. 793.

Opinion Filed January 12, 1937.

*Ernest E. Mason,* and *Watson & Pasco & Brown,* for Plaintiff in Error;

*William Fisher,* for Defendant in Error.

TERRELL, J.—In December, 1935, the City of Pensacola passed an ordinance imposing a tax of two per cent. on every sale of real estate. The pertinent part of said ordinance is as follows:

"That there is hereby levied by the City of Pensacola on each and every sale of real estate within the corporate limits of the City of Pensacola a tax equal to two per cent. of the gross amount of such sale, which tax shall in every case be paid by the seller to the City of Pensacola within three days after the consummation of said sale.

"Each and every seller of real estate in respect to sales on which a tax is hereby imposed shall keep complete records showing all sales made in the City of Pensacola which records shall show the price charged upon each sale and the date thereof and shall at all reasonable times be open for inspection by the duly authorized agents of the City of Pensacola, who shall have authority to make such transcription as they may desire.

"The City Manager shall bring or cause to be brought all such suits and actions and take such proceedings as may be necessary for the recovery of such taxes."

In January, 1936, defendant in error, Edward W. Lawrence, made a sale of certain real estate in the City of Pensacola for the sum of $32,000.00 by reason of which he became indebted to the City in the sum of $640.00, which he refused to pay. The city then brought a common law action against Lawrence laying damages in the sum of $1000.00. A demurrer to the original and the amended declarations was sustained, final judgment was entered for the defendant, and writ of error was prosecuted to this Court.

We are confronted with the question of whether or not the City of Pensacola was authorized to enact the ordinance and impose the tax brought in question. It is admitted that such power must be embraced in the City Charter and if not so conferred it is not present.

The city contends that this question should be answered in the affirmative and relies on the power vested in it by Chapter 6087, Acts of 1909, and Chapter 15425, Acts of 1931, to sustain its contention. It is further contended that the decision of this Court in Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654, is decisive of the city's contention.

The part of Section 1 of Chapter 6087, Acts of 1909, relied on by the city to sustain its position is as follows:

"That the mayor and city council of the City of Pensacola are hereby authorized to levy and impose license taxes for municipal purposes upon any and all occupations and upon any and all privileges, and to grade and fix the amount to be paid as fully and to the same extent and in the same manner that the Legislature could impose such licenses and taxes for said purposes, and without regard to any of the provisions of the general revenue laws of this state not specifically repealing this Act."

As to Chapter 15425, Acts of 1931, it is not contended that any provision of it in terms authorizes the power contended for but reliance is placed on broad general powers given the city therein, such as the power to "exercise all powers which under the Constitution of Florida it would be competent for this Charter specifically to enumerate" and the power "to levy, assess, and collect taxes and to borrow money within the limits prescribed by geenral law; and to levy and collect special assessments for local improvements."

Reliance is also placed on Section 8 of Article VIII and

Section 5 of Article IX of the Constitution pursuant to which the foregoing Acts were passed, including a long line of decisions from this and other states construing similar statutory and constitutional provisions. We have read all of these with care but we fail to find any such power vested in the city through its charter as is here contended for.

It is settled that all taxing statutes should be strictly construed. The city defends the tax in question on the ground that it is an excise tax, that is to say a tax "laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges." Cooley on Taxation, Vol 1, Sec. 42, page 126; Amos v. Gunn, 84 Fla. 285, 94 So. 165. And being an excise tax, ample warrant for it was contained in the charter provisions here quoted.

We do not offer the foregoing as an inflexible, all-inclusive definition of an excise tax but it covers the general concept of that term and the statutes relied on by appellant contain nothing to broaden this concept. The City Charter, Chapter 15425, Acts of 1931, is very general in terms relating to the ordinary powers vested in the city and the part of Chapter 6087 relied on limits the power of the city to impose excises on "occupations" and "privileges." An occupation as employed in excise tax laws has reference to one's vocation and a privilege as used in such laws has reference to a franchise or right granted one by the government.

The power to impose an excise tax on "occupations" and "privileges" has reference to those in which the payer of the tax is engaged in a continuing series of transactions, it certainly could have no reference to remote, isolated, or infrequent sales of real estate. If it could be so construed

then by the same token the city can enact an ordinance imposing an excise tax on the sale of every dog, cat, chicken, mess of greens, or other commodity, sold from the backyard.

There is another very potent reason why the power contended for by the city should not be construed to be conferred by the ordinance in question. It involved a question of policy in that it imposes an excise tax on a class of transactions not heretofore considered as proper to be embraced in such statutes. If such power is intended it should be given in clear and certain terms. In other words, the power to create new occupations and privileges and impose excise taxes for their exercise should be given in unmistakable terms and when tested by this standard we find no such power conferred on the city.

If the making of an isolated sale of real estate could be said to be embraced in the generally accepted category of "occupations" or "privileges" that were generally subject to the payment of an excise tax then Heriot v. City of Pensacola, *supra,* would be authority to support appellants' contention, but that case involved a license tax on the sale of gas, water, and electricity, under conditions prescribed and the tax was imposed in unmistakable terms. It was not, as in this case, imposed under what was thought to be an implied or assumed power.

It is also contended that increased demands on the city and lessened resources to meet them because of the adoption of the homestead amendment make it all the more imperative that the challenged tax be upheld. The answer to this contention is that pinched financial condition and distress brought on the city by its voluntary act do not clothe it with a power to create new sources of revenue to replenish its depleted coffers.

Then, might we not as reasonably construe the action of the people in adopting the homestead amendment as a mandate from them to city and county officers to cut their budgets and reduce their expenditures rather than as a suggestion to go out in search of a new solar plexus in the anatomy of the taxpayer to bore into?

Municipalities, like individuals, should set a standard to live by based on their reasonable capacity to produce rather than by the maximum amount they can extract from the tax-paying public. This Court takes judicial knowledge of the census reports, that they show that the majority of our population is urban and being so we will not assume that the homestead amendment was adopted without knowledge of its effect on municipal finances.

We find no basis for the charge that the ordinance complained of is ambiguous, nor do we decide or express any opinion as to the constitutionality of such ordinances or the power of the Legislature to authorize them. We merely decide that there was an absence of power in the City of Pensacola to enact such an ordinance.

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

ELLIS, C. J., and WHITFIELD, BROWN, BUFORD and DAVIS, J. J., concur.