CITY OF MIAMI, a municipal corporation of Florida, v. IRWIN KAYFETZ, et al.

30 So. (2nd) 521
April 22, 1947
Rehearing Denied June 13, 1947.

January Term, 1947
En Banc

*J. W. Watson, Jr.,* and *W. W. Charles, Jr.,* for appellant.

*Aronovitz, Weinkle & Aronovitz* and *Thomas H. Anderson,* for appellees.

BUFORD, J.:

On the 25th day of July, 1946, the City Commission of the City of Miami, Florida, enacted Ordinance No. 3139. The pertinent provisions of that ordinance are:

"Sec. 32. *Rate and amount of excise tax.* That there is hereby levied and imposed by the City upon each and every purchase of admission to, attendance at, or enjoyment of, any night club show on or after the 1st day of September, 1946, an excise tax the amount whereof shall be twenty-five (25c) cents for each purchaser. The operator is hereby required and it shall be his duty hereunder to render a bill to each purchaser, and the amount of such excise tax shall be entered and shown by the operator as a separate item on each such bill and shall become due and payable to the City whenever such bill becomes due and payable under the rules and regulations of the operator. The purchaser is hereby required and it shall be his duty hereunder to pay such excise tax to the operator, as agent for the City, at the time of the payment of such bill, and in the event that the purchaser shall fail, neglect or refuse to pay such excise tax to the operator when such bill becomes due and payable, the operator is hereby empowered and required to refuse forthwith to make any further sales or to render any further service to the purchaser until the total amount, including such excise tax, shown upon such bill shall have been paid in full. The operator is hereby authorized and required and it shall be his duty hereunder to collect such excise tax from such purchaser at the time of the payment of each such bill and to remit the same to the Department of Finance of the City in accordance with the provisions of Section 33 of this Chapter, provided, however, that the operator shall have the right and privilege of assuming and paying such excise tax himself in lieu of collecting the same from the purchaser;

and provided further that whenever the operator shall fail or neglect to collect such excise tax from the purchaser as hereinbefore provided, the operator shall be deemed to have assumed such excise tax himself and shall thereupon become liable for the payment of the amount thereof to the City to the same extent as if such excise tax has been collected from the purchaser.

"Sec. 33. *Remittance of tax to City by Operator.* That every operator is hereby required to execute and file not later than the fifteenth day of each month at the office of the Department of Finance of the City a sworn statement on a form prescribed by said Department, setting forth the amount of such excise tax to which the City became entitled under the provisions of Section 32 of this Chapter on account of bills paid by purchasers during the preceding month, and contemporaneously with the filing of said statement, shall pay said amount of such excise tax (less the credit allowed to the seller under the provisions of Section 35 of this Chapter) to said Department of Finance to be deposited to the credit of the General Fund of the City for utilization for such legal purposes as the Commission may from time to time determine.

"Sec. 34. *Establishment and Maintenance of Records by Operators.* That every operator is hereby required to establish and to maintain appropriate accounts and records showing in such detail as the Director of Finance of the City may prescribe the amount of such excise tax payable to the City under the provisions of Sections 32 and 33 of this Chapter and such accounts and records shall be open to inspection by the Director of Finance or his duly authorized agent at all reasonable times. The Director of Finance is hereby authorized and empowered to promulgate from time to time such rules and regulations with respect to the establishment and maintenance of said accounts and records as he may deem necessary to carry into effect the purpose and intent of the provisions of Section 32 to 34, inclusive of this Chapter.

"Sec. 35. *Reimbursement of Operator for expense incurred.* That, at the time of making each remittance to the City under the provisions of Section 33 of this Chapter, the

operator shall be entitled to withhold and retain, as reimbursement to him for expense incurred in effecting the provisions of Sections 32 to 34, inclusive, of this Chapter, five per centum (5%) of the amount of excise tax shown upon the sworn statement to which such remittance pertains.

"Sec. 36. *Violations defined.* That it shall be unlawful and a violation of this Chapter for any purchaser to evade the payment of such excise tax, or of any part thereof; or for any operator to fail or refuse to pay to the City all amounts of excise tax payable to the City by the operator hereunder, or to fail or refuse to file said monthly sworn statement, or to set forth any erroneous or false information therein with intent to defraud the City, or to refuse to permit the Director of Finance of the City or his duly authorized agent to examine the accounts and records to be kept as required by Section 34 of this Chapter.

"Section 37. *Each violation a separate offense.* That each violation of, or non-compliance with, any of the provisions of Sections 32 to 34, inclusive, of this Chapter shall be and constitute a separate offense and shall subject every person guilty thereof to all of the penalties prescribed in Section 38 of this Chapter.

"Section 38. *Penalties for Violations.* That every person violating any of the provisions of Sections 32 to 34 inclusive, of this Chapter shall be punishable in accordance with the provisions of Section 5 of Chapter 1 of this Code."

On November 21, 1946, appellee filed his bill of complaint in the Circuit Court of Dade County, Florida, in which he challenged the validity of the above stated provisions of the ordinance on numerous grounds. The City, in its answer, inter alia, said:

"Further answering said paragraph II of the Bill of Complaint, defendant would show that it is not necessary that an admission price be charged by a night club in order to subject such night club to the provisions of 3139 imposing the twenty-five cent tax. Section 32 of said Ordinance 3139 is a tax imposed upon each patron of a night club who attends or enjoys night club shows. Said Section of the Ordinance requires the night club operators to render a bill to

each person attending a night club performance setting out the twenty-five cent excise tax as a separate item on the bill. The tax is not a tax upon the operator or owner of a night club, but is a tax upon those patrons of such establishments who attend or who enjoy a night club show. The night club operator is given the privilege under the ordinance of assuming said excise tax in lieu of collecting it from the patrons. Under the definitions contained in Section 31 Ordinance 3139, the word 'purchase' as applicable to admission to a night club is defined as 'every act or transaction whereby the right to admission to, attendance at, or enjoyment of, any night club show, and the duty and obligation to pay for the acquisition and utilization of such right, become vested in the purchase.' "

The Chancellor, in holding the above stated provisions of the Ordinance invalid, said, inter alia:

"A reading of the applicable charter provisions shows that the power given for license or excise taxes does not extend to taxing an individual other than as an incident to his trade, business or profession. Nor shall the fact that the terms 'license tax' and 'excise tax' are here used together have any bearing. In Amos v. Gunn, 94 So. 615, at 640, it is said: 'An excise tax partakes of the nature of a license tax.' And also 'an excise tax is one laid on licenses to pursue certain occupations, corporate privileges or sales or consumption of commodities.'

"Now, if the City under its said charter can impose an excise on an individual for the privilege of going into a night club, then it can impose a similar tax on the individual for walking, sleeping or for the privilege of breathing.

"This court is not unmindful of the case of Heriot v. City of Pensacola, 146 So. 654, decided in 1933, where the Supreme Court approved an excise on consumers of utilities (electricity, gas, water and certain telephone service). The frame of the present Miami ordinance indicates that the Pensacola case was relied on for precedent and support.

"In spite of the fact that the Court, in the Pensacola case, approved the excise as a tax on the privilege of purchasing the utility services (also saying 'the tax is levied on the

consumption of commodities which in their distribution are necessarily transported by wires upon, and pipes under, the public ways of the City),' there were at least two features or distinctions in that case which serve to eliminate it as any support for the Miami Ordinance.

"First, this 'privilege' for which the individual was taxed was a legally enforceable right to receive public utility service. A person is not entitled to demand admission to a night club. It is not inconceivable that an applicant might be considered unsuited for admission to a night club. (Also, this 'privilege of receiving utility service' was classed by the Court as being a tax on consumption of commodities, discussed at more length herein below. So it is, that even if the charter could be construed to authorize such a tax on 'privileges' of its inhabitants aside from their business or occupations the power could not reasonably be applied to bare 'privileges' such as that of entering various types of buildings of establishments. This is not intended to mean that it would not be proper for taxes to be imposed on the operators of places visited by individuals, other essential legal requirements being met."

Not every tax which may be levied by statute in favor of the State may also be levied by ordinance in favor of a municipality. It has been recognized as a truism that the power to tax is the power to destroy. The State possesses the inherent power to tax but a municipality may exercise the taxing power only to that extent to which such power has been specifically granted by the legislature:

In McQuillin, Municipal Corporations, Vol. 6, Section 2531, it is said:

"In the construction of the grant of any power to tax, made by the state to one of its municipal corporations, the rule accepted by virtually all the authorities is that it should be with strictness. A citizen cannot be subjected to the burden of taxation without clear warrant of law. Therefore, 'statutes authorizing the levy of taxes are to be strictly construed; they are not to be extended by implication, nor is their operation to be enlarged so as to embrace matters not

specifically pointed out, though standing upon a close analogy.' " . . . .

"If the authority of the municipality to tax is doubtful, the doubt must always be resolved against the tax." . . . .

"As said by that eminent jurist, teacher, and text writer, Judge Cooley, (Cooley, Taxation, 3rd Ed. p. 469; and see 4th Ed. Sec. 505) the rule of strict construction of statutes as to the purposes for which municipalities may levy taxes 'limits municipalities, in the levy of taxes, strictly to the ordinary purposes for which such municipalities are accustomed to make levies. The customary grant does not go a step beyond this, because it cannot be supposed that in giving the customary authority the legislature had any but the usual and ordinary objects of local taxation in view. . . . The mischief of a strict construction is easily obviated by the legislature; but the mischief of a liberal construction may be irremedial before it can be reached.' " . . . .

If power is expressly granted to levy particular taxes, it excludes by implication power to levy and collect other taxes. So power delegated to levy taxes for certain purposes 'or for any other purpose that they may deem necessary,' authorizes taxes only for purposes of the same general character as those already enumerated."

Generally, the rule is that statutes conferring authority to impose taxes must be strictly construed. Moseley v. Tiff, 4 Fla. 402; Ex Parte Sims, 25 So. 280, 40 Fla. 432; Heriot v. City of Pensacola, 108 Fla. 480.

It is also stated in Ex Parte Sims, supra:

"Another general rule universally recognized is that delegated corporate powers to municipalities, particularly grants of power that are out of the usual range, and that may result in pubilc burdens, or which in their exercise touch the right to liberty or property or any common law right of the citizens must be strictly construed and when in such construction there is any ambiguity or doubt as to the extent of the power it is to be determined in favor of the State or general public and against the State's grantees."

In Drake et al v. Phillips, et al, 40 Ill. 388, 394, it is said:

"It is one of the most firmly established rules of law,

that corporations can exercise no power but such as is delegated to them. These towns are quasi corporations, and exercise the powers conferred by the legislature. It is alone from that source that they derive power to lay and collect taxes and in doing so their action must conform to the legislative grant of the power both as to the amount and the purposes specified. If they either exceed the percent authorized or impose a tax for unauthorized purposes, their acts will be void. The township organization law specified certain purposes for which taxes may be levied, and then adds: 'Or for any other purpose they may deem necessary.' It is claimed that the tax in question can be levied under this general clause. But that clause must be construed as authorizing taxation only for purposes of the same general scope and character with those already enumerated, and to enable towns to carry into execution the powers granted to them by the legislature."

The City of Miami has attempted, by this Ordinance, to levy a tax directly against the patrons of night clubs for exercising the privilege of indulging in the entertainment furnished by the night club. The night club operator is by the Ordinance made the agent of the municipality, with the authority and duty imposed upon him to collect the tax, and in his default of collecting the tax he is required to pay it himself. If he collects the tax he is entitled to retain 5% as his commission for the collection. Under the terms of the Ordinance, a patron who refuses to pay the tax is guilty of a penal offense and if the night club operator fails to pay over the tax, whether collected by him from the patron or not, he is guilty of a like penal offense. It is this latter phase of the Ordinance which gives the night club operator his standing in court to contest the validity of the Ordinance.

If the City of Miami has the power to levy such a tax as is here under consideration, that power was delegated either by the provisions of Section 167.43 Fla. Statutes of 1941 (same F.S.A.) or by its charter provisions. Sec. 167.43, supra, is as follows:

"167.43. To impose and collect taxes. The City or Town Council may raise, by tax and assessment upon all real and

personal property, and by license on professions, business and occupations carried on within the corporation, all sums of money which may be required for the improvement and good government of the city, and for carrying out the powers and duties herein granted and imposed; and enforce the receipt and collection of the same in the manner now provided by the laws of the State for the assessment and collection of state taxes and licenses."

The pertinent parts of the City Charter in this regard are contained in Section 3 and provide that the City of Miami shall have power. . . .

"(bb) License and privilege taxes. To license and tax privileges, business, occupations and professions carried on and engaged in within the city limits, and the amount of such licenses and the amount of such license taxes shall not be dependent upon a general state revenue law."

"Sec. 42. The general law of the State of Florida upon the subject of taxation as it now exists shall apply to and govern in the assessment, levy and collection of taxes in the City of Miami and in the return and sale of property delinquent therefor; and shall also apply and govern in respect to the powers, duties and liabilities of persons and property touching and concerning such taxes, and shall have full force and effect in said city as far as the same may be applicable, except as herein otherwise provided."

"Sec. 49. In providing for licensing and regulating, persons, corporations and associations engaged in business occupations, professions and trades, the Commission may by Ordinances classify businesses and arrange the various businesses, occupations, trades and professions carried on in the city into such classes as may be just and proper and fix by ordinance the license fee payable by each, without regard to the State law fixing such fees.

"Sec. 84. All general laws of the State applicable to municipal corporations, heretofore or hereafter enacted and which are not in conflict with the provisions of this charter or with the ordinances or resolutions hereafter enacted by the commission pursuant to authority conferred by this charter, shall be applicable to said city; provided, however,

that nothing contained in this charter shall be construed as limiting the power of the commission to enact any ordinance or resolution not in conflict with the constitution of the state or with the express provisions of this charter."

There is nothing in Sec. 167.43, supra, which would authorize the imposition of the tax here under consideration. So the City must base its right on sub-paragraph (bb) of Sec. 3 of the Charter Act and it is the contention of the City that this provision delegates to it the power to license and tax privileges within the broad meaning of the term "privileges." We think the meaning of this word as used in the statute must be gathered from the context in which the word is used and when so construed the word "privileges" refers to rights to engage in occupations or vocations the pursuit of which may be regulated by law. It cannot be applied so as to place a head tax on individual members of the public for the privilege of attending a base-ball game, a picture show, a prize fight, a race track or a night club, or other like amusements.

The privileges contemplated for taxation by this section are those which one may exercise by receiving patronage from the public and which may be regulated or controlled by the sovereign. The Section does not delegate the power to impose a tax on the members of the public who may patronize the activity or enterprise which is conducted under the license issued to the operator to exercise the privilege contemplated by the statute.

In other words, this section of the statute delegates to the municipality only the power to impose occupation license taxes. See City of Pensacola v. Lawrence, 126 Fla. 830, 171 So. 793.

It is admitted that the ordinance involved is a revenue measure and not a police regulation.

In the Lawrence case, supra, we said:

"The power to impose an excise tax on 'occupations' and 'privileges' has reference to those in which the payer of the tax is engaged in a continuing series of transactions, it certainly could have no reference to remote, isolated or infrequent sales of real estate. If it could be so construed then

by the same token the city can enact an ordinance imposing an excise tax on the sale of every dog, cat, chicken, mess of greens, or other commodity, sold from the back-yard.

There is another very potent reason why the power contended for by the city should not be construed to be conferred by the ordinance in question. It involved a question of policy in that it imposes an excise tax on a class of transaction not heretofore considered as proper to be embraced in such statutes. If such power is intended it should be given in clear and certain terms. In other words, the power to create new occupations and privileges and impose excise taxes for their exercise should be given in unmistakable terms and when tested by this standard we find no such power conferred on the city."

See also McQuillin, Municipal Corporations, 2nd Ed. Vol. 3, Sec. 1086, et seq.

We do not think that the right of the municipality to classify amusements and lay a tax on the privilege of indulging in one sort of amusement and not in another is involved here. Our view is that the legislature could lawfully authorize a municipality to levy tax such as is attempted by this Ordinance on or against the patrons of any sort of a place of amusement which the public may be required to pay to attend or indulge in. Our view is also that the legislature might reasonably classify amusements and authorize the municipality to levy a tax against those attending amusements of one class and not of another. Also, we think that if the municipality should be authorized generally to levy a tax against the members of the public attending such places of amusement that the municipality could then exercise the power of classification and levy the tax against those attending some class of places of amusement and not against those attending places of some other class.

The case of Heriot v. City of Pensacola, 108 Fla. 480, 146 So. 654, is not in point here because in that case the court took pains to point out that the Pensacola Charter provided:

"The City of Pensacola, under this Act, shall have and is hereby granted authority to exercise all powers relating to the municipal affairs; and no enumeration of powers, in

any law, shall be deemed to restrict the general grant of authority, under the general laws of the State, applicable to municipal corporations, hereby conferred.

The following shall be deemed to be a part of the powers conferred by this section:

(1) To levy, assess and collect taxes and to borrow money within the limits prescribed by general law; and to levy and collect special assessments for local improvements."

Section 2 of said Chapter, among other things, provides:

"It is intended that the City of Pensacola shall have, and may exercise all powers which under the Constitution of Florida it would be competent for this charter to specifically enumerate."

And in that connection the Court further said:

"What the legislature intended in sub-section 1, of Chapter 15,425, Acts of 1931, must be determined from the purpose of the Act and the language used. Clearly, the purpose of the Act was to grant, rather than restrict, powers to the City of Pensacola and to vest the City with a charter free from the provisions of the general law. The wording of the sub-section indicates that the words 'within the limits prescribed by general law apply to the borrowing of money and not to the levying, assessing and collection of taxes. If it had been the intention of the Act to limit also the right to levy, assess and collect taxes, we think that the word 'to' before the word 'borrow' would not have been inserted. In giving the sentence an ordinary construction, consistent with the natural arrangement of the language used, the quoted phrase 'within the limits prescribed by general law' limits the power to borrow money, and has no reference to the power to levy, assess and collect taxes. If the legislature had intended otherwise, why the word 'to' before the word 'borrow'? Why did not the sentence read 'to levy, assess and collect taxes and borrow money within the limits prescribed by general law'? The word 'to' can have no meaning unless it was to break the continuity of power and separate the power to levy, assess and collect taxes from the power to borrow money. When we consider this phrase with that contained in Section 2, viz: 'It is intended that the City of

Pensacola shall have and may exercise all powers which under the Constitution of Florida it is competent for this charter to specifically enumerate,' and with the provision of Section 3 of said Act, wherein all power of the then existing charter is reserved, and Chapter 6087, Acts of 1909, which specifically confers power upon the City, to levy licenses upon privileges, and keeping in mind the purpose of the Act as expressed in the title and drawn from the whole context thereof, to-wit: the granting of power and changing the whole scheme of government far beyond the scope of the general municipal laws. There can be no doubt that the power has been conferred, and the City had power to levy the tax in question."

This case supports the view herein expressed rather than that contended for by the appellant. See also City of St. Paul v. Twin City Motor Bus Co., 187 Minn. 212, 245 N.W. 23, where the court held that a charter provision authorizing the imposition of a tax on a privilege that "the word 'privilege' as used in the charter means a special right enjoyed by one under legislative authority, a right not belonging to the public generally, a right resulting only from the affirmative action of legislative authority."

We, therefore, think the decree of the lower court should be affirmed.

So ordered.

THOMAS, C. J., TERRELL, ADAMS, JJ., HARRY N. SANDLER and MILLARD B. SMITH, Associate Justices, concur.

CHAPMAN, J., dissents.