J. R. ASBELL, et al., as Commissioners of The City of Panama City, Florida, a municipal corporation, and HARRY HARRIS as Clerk of said City and the CITY OF PANAMA CITY, FLORIDA, a municipal corporation, v. JAMES A. GREEN, SAMUEL S. CARTER, et al.

32 (So. 2nd) 593                                          June Term, 1947
November 21, 1947                                            En Banc

*William Fisher, Charles S. Isler* and *Thomas Sale,* for appellants.

*Mercer P. Spear,* for appellees.

BUFORD, J.:

The City of Panama City undertook to amend its Ordinance under the provisions of Section 186 of Chapter 11678, Laws of Florida 1925, being the charter Act of the City of Panama City. That section provides:

"Sec. 186. Amendment of Charter.—Amendments to this Charter may be submitted to the electors of the City by a two-thirds vote of the City Commission, or by a petition signed by twenty per cent of the electors of the City setting forth any such proposed amendment, [which] shall be submitted by action of the City Commission. The Ordinance providing for the submission of any such amendment shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty days and not more than one hundred and twenty days after its passage; otherwise, it shall provide for the submission of the amendment at a special election to be called and held within the time aforesaid. Not less than thirty days prior to such election the City Clerk shall advertise the proposed amendment in a newspaper published in said City in two consecutive issues, said

publication to be not more than twenty nor less than five days before such submission. If such amendment be approved by a majority of the electors voting thereon, it shall become a part of the charter at the time fixed therein."

Under the Ordinance to so amend the Charter an election was called to be held on April 16, 1946, for the adoption of the amendment to the charter. The title to the proposed ordinance to be Ordinance No. 329 states the substance of the proposed ordinance and is as follows:

"An Ordinance Calling a Special Election to Be Held on April 16, 1946, For the Purpose of Amending the Charter of The City of Panama City, Florida, (Chapter 11678, Laws of Florida, 1925) by Authorizing and Empowering the City Commission of the City of Panama City, Florida, to Make the Following Municipal Improvements at the Estimated Cost Appearing After Each Such Municipal Improvement, To-Wit: 1. Airport Development Project—$200,000.00. 2. Street Paving, Curb, Gutter and Storm Sewer Improvements—$508,335.00. 3. Sanitary Sewer System and Disposal Plant—$1,800,000.00. 4. Recreation Facilities, Including But Not Limiting to a Play Ground, an Auditorium, a Football and Baseball Stadium, a Pier and Pavillion, a Bridge and a Yacht Basin, $1,317,765.00; Authorizing and Empowering the City Commission by Ordinance to Levy, Assess, Impose, Collect and Enforce a Sales and/or Use and/or Service Tax Upon any or All Business Transactions (Excluding Sales and Contracts for Sale of Real Property Only), on the Following Graduated Scale, To-Wit: Transactions Not Exceeding 14 Cents Shall Be Exempt From This Tax: Transactions of From 15 to 62 Cents Shall Be Taxed 1 Cent: Transactions of From 63 Cents to $1.12 Shall Be Taxed at the Rate of 1 Cent for Each 50 Cents or Fraction Thereof of the Transaction in Excess of $1.12; Authorizing and Empowering the City Commission of the City of Panama City, Florida, to Issue Bonds or Certificates in Payment for Such Improvements and to Fix and Determine the Rate of Interest the Same Shall Bear: Providing That the Entire Amendment in the Exact Language Thereof Shall Appear on the Ballot; and Providing That This Ordinance Shall Become Effective As Provided By Law."

Bill was filed by citizens and taxpayers to enjoin the holding of the election and to enjoin the City from levying, assessing, imposing, collecting or enforcing the said sales, use or service tax proposed in the said ordinance. The bill, inter alia, alleged:

"2. Plaintiffs would further allege and show unto the Court that by ordinance duly passed on the 12th day of February, 1946, and enacted the said Commissioners, acting for and on behalf of the said City of Panama City, Florida, provided for the calling of a special election to be held in said City on April 16, 1946, for the purpose of amending the Charter of said City, by authorizing and empowering the City Commission of said City to make certain municipal improvements in said Ordinance particularly set forth and authorizing and empowering the said City Commission to Levy, Assess, impose, collect and enforce a sales or use or service tax upon any or all business transactions in said City (excluding sales and contracts for sale of real property only) on a graduated scale in said Ordinance particularly set forth, and authorizing and empowering the said City Commission of said City to issue bonds or certificates in payment of such improvements and to fix and determine the rate of interest the same shall bear.

"3. Plaintiffs would further allege that the levy, assessment, imposition, collection or enforcement of such sales, use or service tax as so provided for in said Ordinance by said City and said City Commissioners acting for and on behalf of said City is without authority of law and would be an ultra vires act of said municipal corporation; that the Charter of the said City does not authorize and empower the said City to levy, assess, impose, collect or enforce a sales, use or service tax as described in said Ordinance and that there is no authority in law for the said City to carry out the terms and provisions of said Ordinance.

"4. Plaintiffs would further allege that the calling and holding of the special election provided for in said ordinance will entail the unauthorized expenditure of the public funds of the said City; that the said City Commissioners are not lawfully authorized or empowered to call or provide for the said special election for the purpose of amending the Charter of

the said City; that the calling and holding of said election will result in the expenditure of considerable of the public moneys of said City, and that there is no lawful authority for the said City to expend such moneys for a special election for the aforesaid purpose; that the expenditure of moneys by the said City for the purpose of said election will cause irreparable injury to the Plaintiffs, an injury for which they have no adequate remedy at law."

The City filed motion and supplementary motion to dismiss the bill of complaint. These motions were denied. The record indicates that a restraining order was entered, but such order does not appear in the record.

Thereupon, the defendants answered. Their answer in effect alleged that Sec. 186 of the Charter, supra, was a valid delegation of the legislative power, that the ordinance No. 329 had been duly and validly passed pursuant to authority in Section 186, supra, for the purpose of amending the Charter of the City of Panama City, and alleged:

"Under the present charter of the City, unamended, the City has not been granted authority by the Legislature to levy, assess, impose, collect and enforce a sales, or use, or service tax as provided for in the ordinance. But section 186 of the City Charter is a valid and lawful delegation by the Legislature of the State of Florida to the City of Panama City of the right and authority to amend its Charter in order that the City might have the right and power and authority to levy, assess, impose, collect and enforce a sales, or use, or service tax. The said ordinance was not passed for the purpose of making such levy or imposition but was passed for the purpose of enabling the qualified electors of the City of Panama City to vote, at the special election called for by the ordinance, for the amendment to the Charter of the City which would, and validly could, authorize and empower the said City through its duly constituted authorities, to levy, assess, impose, collect and enforce such sales, or use, or service tax."—and further alleged:

"The defendants deny the allegations of paragraph V of the bill of complaint, and with respect to the allegations of said paragraph the defendants aver that the amendment to

the Charter of the City of Panama City provided for by the ordinance, a copy of which is attached as Exhibit 'A' to plaintiff's bill of complaint, will validly authorize and empower the City of Panama City through its duly constituted authorities, to levy, assess, impose, collect and enforce a sales, or use, or service tax; and that with such authority, through amendment of the City Charter, the plaintiffs and the other citizens and taxpayers of the said City will be validly and legally subject to the levy, assessment, imposition, collection and enforcement of such tax."

The defendants included in the answer counter-claim praying for a declaratory decree declaring the status and rights of the defendants, cross-plaintiffs, upon the following questions:

"(a) May the Charter of the City of Panama City be validly amended in the manner provided for in Chapter 11678, Laws of Florida, Acts of 1925?

"(b) May an ordinance, to be submitted to the qualified electors of the City of Panama City as an amendment to the City Charter:

"(1) Validly propose and outline the several municipal construction projects as set up in the ordinance attached to the Bill of Complaint as Exhibit A, in order that the said City may acquire charter authority to construct such projects; and, if not all, which, if any, of said projects could be lawfully authorized by an amendment to the City Charter?

"(2) Validly provide Charter authorization for municipal bonds to be issued subject to the provisions of Section 6, Article IX of the Constitution of Florida and to the result of the eletion required by said Section 6?

(3) Validly provide Charter authorization for the levy, assessment, imposition, collection and enforcement of the sales and/or use and/or service taxes as described in Exhibit A of the Bill of Complaint? And, if not all of such taxes,

"(4) Which, if any, of such taxes could be lawfully and validly authorized by Charter Amendment?

"(5) If the fixing of the exact amount of such taxes in the Charter amending ordinance be invalid, then could the ordinance, by Charter amendment, give valid charter authoriza-

tion to the City to levy, assess, impose, collect and enforce sales and/or use and/or service taxes of not exceeding the amounts as set out in Exhibit A of the Bill of Complaint, leaving to subsequent action by the City of Panama City, through its duly constituted authorities, the actual levy, assessment, imposition, collection and enforcement of any or all of such taxes in amounts then fixed, and not in excess of the maximum amounts as set out in the amendatory ordinance?"

In support of defendants, cross-plaintiffs, status to have the relief prayed, it is, inter alia, alleged:

"That by reason of the injunction issued in this case which made it impossible to hold the special election provided for by the said ordinance, and by reason of the questions raised as to the right of the citizens of the City of Panama City to amend the City Charter as provided for by Section 186 of the said Charter, and by reason of certain questions that have been raised as to some of the provisions of the said ordinance, assuming that the charter may be amended in the manner provided for by Section 186 of the charter, these defendants are in doubt as to their rights and authority to pass another ordinance to call for an election on the amendment to the Charter and as to the extent to which such amendment may be used to confer authority upon the City Commission to levy a sales, or use, or service tax and to provide in the manner required by the constitution and laws of the State of Florida for the issuance of bonds by the City of Panama City for the purpose as set forth in the said ordinance, And the plaintiffs have threatened to bring other injunction proceedings in event another ordinance is passed calling for an election to amend the Charter of the City of Panama City authorizing one or more or all of the improvements set forth in the ordinance attached as Exhibit 'A' to the bill of complaint, and authorizing the imposition by the City of a sales, or use, or service tax. That by reason of the fact that this Court issued an injunction in the instant case and that in event another ordinance is passed and an amendment is to be submitted to the qualified electors of Panama City it is possible and probable that another injunction will be sought to prevent the holding of the election; and since the injunction was issued in this

case, and in all probability will be issued in any future cases that may be brought involving the same or a similar controversy, so close to the day set for the holding of a special election that it was in this case, and probably will be in such future case, impossible to get a final determination of the question in time to hold the election, the defendants, in this counterclaim and cross-complaint seek a declaratory decree, under the provisions of Chapter 21820, Laws of Florida, Acts of 1943, in order that the question may be determined as to the right, power, authority and status of the defendants under the City Charter of the City of Panama City, and also with respect to the extent to which, if the Charter may validly be amended as provided by Section 186 of the City Charter, such amendment may authorize the duly constituted authorities of the City of Panama City to Provide, in accordance with the laws, for the proposal, and submission to the qualified electors of the City for approval, of bonds for the construction of improvements; and the extent to which the duly constituted authorities of the City may be empowered by such amendment to the Charter, to levy, assess, impose, collect and enforce a sales tax, or a use tax, or a service tax for the purpose of raising revenue for the service of such bonds and for such other municipal purposes as may be determined by the City of Panama City."

Motion was made to dismiss the counter-claim and on that motion being denied, motion was made to strike parts of the counter-claim, which motion was granted. Thereupon, the counter-claim was amended, a portion of that was stricken and motion to strike other portions was denied.

Thereupon, answer was filed to the counter-claim as amended. In the answer was included the following:

"Plaintiffs further allege that Section No. 186 of the charter of the City of Panama City set forth in defendants' Answer merely provides the procedure by which the charter of the City of Panama City may be amended, and does not authorize and empower said city to so amend its charter as to take unto itself any greater power or authority than it has under said charter, the Constitution, and laws of the State of Florida; Plaintiffs further allege that the manner by which

said City is authorized to raise money for the carrying on of its corporate functions is fully set out in the charter of said city and that nowhere in said charter is the said city given authority or power to assess, levy or collect a sales, use or service tax, as described in said ordinance, and that there is no provision in said City charter where-from authority for such a tax can be reasonably implied."

The issues having been thus presented, the following stipulation was presented in lieu of testimony:

"1. That the Charter of the City of Panama City, Florida set out in Chapter 11678 Special Acts of 1925, Laws of Florida, be considered as having been introduced in evidence in this cause. That multigraphed copies of the said Act may be made a part of any record on appeal; and that the above entitled Court and the Supreme Court of Florida, take judicial notice of said Chapter 11678.

"2. That the Defendants are in doubt as to the extent to which the charter of the City of Panama City may be amended as provided for by Section 186 of Chapter 11678 Special Acts of 1925, Laws of Florida, and are desirous of obtaining declaratory decree upon the questions set out in the amended counter-claim and cross-complaint before providing, by ordinance, for an election with respect to said amendment. It is agreed that this Stipulation No. 2 shall not prejudice the right of the Plaintiffs, as cross-defendants, to raise the questions heretofore raised by their motions to strike and to dismiss, with respect to the legal sufficiency of the amended counter-claim and cross-complaint."

On final hearing the Chancellor held that Section 166.01 Florida Statutes 1941, (same F.S.A.) is controlling as to any municipality amending its Charter whether such municipality be incorporated by Special Act of the Legislature or under the General Laws of the State relating to cities and towns and that such statute did not authorize the amendment proposed in the manner attempted to be used and made the restraining order permanent.

Section 166.01, supra, is as follows:

"Municipalities may amend or alter their charters; proviso.—Every city and town in the State of Florida, whether

incorporated by a special act or under the general laws of the state relating to cities and towns, in the manner herein prescribed, may alter or change the numbers, powers, duties, compensation, terms of office, and the time and manner of election or appointment of any and all officers and boards, whether created by or recognized in state legislation or ordinances; abolish any or all offices and boards, whether created by or recognized in state legislation or ordinances, and create such offices and boards as may be deemed proper for the government of such city or town, and provide the manner of their election, or appointment, and otherwise determine the manner in which its corporate powers shall be exercised, by amending its charter, or adopting a new charter, consistent with the constitution and the General laws of the state; or whenever a city or town has, by special law, greater or more extensive powers than those conferred on cities and towns by the general laws of the state, then and in that case, consistent with such special laws giving such city or town special powers and in other respects consistent with the constitution and general laws of the state; provided, however, that this article shall not be so construed as to authorize any city or town to enlarge its corporate powers beyond the limitations prescribed by law, except that it may extend its territorial boundaries as provided by law."

It will be observed that this section applies to the powers of every city and town of the state whether incorporated by special act or under general laws relating to the cities and towns and is a limitation upon the powers and duties which may be acquired by such municipalities through the medium of amending their charters by municipal action. It, therefore, excludes the exercises of the power of amending the charter by municipal actions which do not come within the purview of this section. See City of Miami v. Kayfetz 158 Fla. 758, 30 So. (2nd) 521.

In the case of Pursley v. City of Fort Myers, 87 Fla. 428, 100 So. 366, we had under consideration Section 1 of Chapter 6940, Laws of 1915, which was re-enacted in 1941 as Section 166.01, supra, and we said:

"Under the doctrine of the separation of the powers of

government the law making function is assigned exclusively to the Legislature. The generally recognized rule is that any attempt to abdicate it in any particular field, although valid in form, is unconstitutional and void. It is a cardinal principle of representative government that except when authorized by the Constitution, as may be the case in reference to municipal corporations, the Legislature cannot delegate the power to make laws to any other authority or body. 6 R.C.L. 164; State v. Butler, 105 Me. 91, 73 Atl. Rep. 560, 18 Ann. Cas. 484, 24 L.R.A. (N.S.) 744; State ex rel Mueller v. Thompson, 149 Wis. 488, 137 N.W. Rep. 20, Ann. Cas. 1913-C 774, 43 L.R.A. (N.S.) 339; Wyeth v. Board of Health of City of Cambridge, 200 Mass. 474, 86 N.E. Rep. 925, 128 A.L.R. 439, 23 L.R.A. (N.S.) 147, and other authorities cited.

And we further said:

"Municipalities have no inherent power to enact ordinances. If the power is not expressly given it is implied as incident to the incorporation of the city or town; but the authority of the ordinance passed is derived from the legislative power of the state. While this view finds support in what they may be considered the decided weight of authority in this country, and with which this court is in harmony, yet it has adhered to the doctrine of municipal liberty in the administration of local affairs so far as the same is consistent with the provisions of our Constitution vesting in the Legislature the power of prescribing the jurisdiction and powers of municipalities. See Kaufman v. City of Tallahassee, 84 Fla. 634, 94 South. Rep. 697.

"But this court has never held that the Legislature can delegate unlimited authority to a municipality to prescribe its own jurisdiction and powers and to alter or amend the same at any time. It cannot surrender the sovereignty of the State to municipalities to the extent of losing control over them. Such a doctrine, said the Supreme Court of Oregon in Straw v. Harris, 54 Ore. 424, 103 Pac. Rep. 777, would be a recognition of a State's independent right of dissolution."

So it is not competent for the City of Panama City by ordinance to extend its powers so as to engage in activities not authorized by its charter and not authorized by general law.

Section 20 of the Charter Act of the City of Panama City, being chapter 11678, Acts of 1925, provides:

"Sec. 20. That the Commission shall have power by ordinance to impose a tax upon any and all business, professions and occupations engaged in or carried on, either wholly or in part within the corporate limits of said City, whether the same be taxed by the State or not, and without regard to the amount of the State tax, if any, imposed upon such business, profession or occupation."

Thus, the power to levy a license or excise tax was limited so that such tax could be imposed only on businesses, professions and occupations engaged in or carried on either wholly or in part within the corporate limits of the city of Panama City.

In the City of Pensacola v. Lawrence, 126 Fla. 830, 171 So. 793, we had under consideration the question of the power of the City of Pensacola to impose an excise tax on the sale of real estate. Involved in this case were the same statutes which were involved in the case of Harriot v. City of Pensacola, 108 Fla. 480, 146 So. 654. In the Lawrence case Mr. Justice TERRELL, speaking for the Court, said:

"It is settled that all taxing statutes should be strictly construed. The city defends the tax in question on the ground that it is an excise tax, that is to say a tax 'laid upon the manufacture, sale or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges.' Cooley on Taxation, Vol. 1, Sec. 42, page 126; Amos v. Gunn, 84 Fla. 285, 94 So. 165. And being an excise tax, ample warrant for it was contained in the charter provisions here quoted.

"We do not offer the foregoing as an inflexible, all inclusive definition of an excise tax, but it covers the general concept of that term and the statutes relied on by appellant contain nothing to broaden this concept. The City Charter, Chapter 15425, Acts of 1931, is very general in terms relating to the ordinary powers vested in the City and the part of chapter 6087 relied on limits the power of the city to impose excises on 'occupations' and 'privileges.' An occupation as employed in excise tax laws, has reference to one's vocation and a privilege

as used in such laws has reference to a franchise or right granted one by the government.

"The power to impose an excise tax on 'occupations' and 'privileges' has reference to those in which the payer of the tax is engaged in a continuing series of transactions, it certainly could have no reference to remote, isolated or infrequent sales of real estate. If it could be so construed then by the same token the city can enact an ordinance imposing an excise tax on the sale of every dog, cat, chicken, mess of greens, or other commodity, sold from the back-yard.

"There is another very potent reason why the power contended for by the city should not be construed to be conferred by the ordinance in question. It involved a question of policy in that it imposes an excise tax on a class of transactions not heretofore considered as proper to be embraced in such statutes. If such power is intended it should be given in clear and certain terms. In other words, the power to create new occupations and privileges and impose excise taxes for their exercise should be given in unmistakable terms and when tested by this standard we find no such power conferred on the city."

In the Harriot case we had under consideration an excise tax imposed upon the purchase of gas, electricity, water and telephone service payable by the consumer and the ordinance authorizing such imposition was held to be valid because the city had power 'to levy, assess and collect taxes and to borrow money within the limit prescribed by general law and to levy and collect special assessments for local improvement." The levy complained of was imposed on the privilege of furnishing and receiving the benefit of the facilities referred to and the ordinance was held to be responsible because the tax was levied upon the consumption of commodities which in their distribution are necessarily transported by wires and pipes upon or under the public ways of the city.

It is true that in that case the provision of the Charter Act, viz: "It is intended that the City of Pensacola shall have and may exercise all powers which under the constitution of Florida it will be competent for this charter to specificly enumerate," is referred to.

If there is any intimation in the opinion that this provision of the Charter authorized the City of Pensacola to extend its powers beyond those specifically enumerated or to be reasonably implied as incidental to the specific powers granted, such implication is now overruled.

The tax here involved is proposed to be imposed on all transactions except that particular class of transaction, to-wit: the sale of real estate, which was condemned in the Lawrence case.

Condemnation of the imposition of the tax in the Lawrence case was not upon the ground that the tax applied to sales of real estate but was upon the ground that it was not an attempt to impose a tax on occupations and privileges but upon casual, remote, isolated or infrequent sales of real estate. In this connection Mr. Justice TERRELL said:

"The power to impose an excise tax on 'occupations' and 'privileges' has reference to those in which the payer of the tax is engaged in a continuing series of transactions, it certainly could have no reference to remote, isolated or infrequent sales of real estate. If it could be so construed then by the same token the city can enact an ordinance imposing an excise tax on the sale of every dog, cat, chicken, mess of greens, or other commodity sold from the backyard."

In the case now before us the city contemplates undertaking to do the very thing that Judge Terrell said it could do if an ordinance such as that condemned in the Lawrence case could be upheld.

We do not mean to hold that the City of Panama City has not the power to levy an excise tax in the form of a sales tax on businesses, occupations and privileges, but if such imposition of taxes is to be held valid it must apply to cases where the payer of the tax is engaged in a continuing series of transactions and cannot be made to apply to casual, isolated or infrequent transactions. When such taxes are imposed on the business, occupation or privilege the burden of the tax may be passed on by the taxpayer to the consumer. See Harriot v. City of Pensacola, supra, and cases there cited.

For the reasons stated, the decree and judgment is affirmed.

So ordered.

THOMAS, C. J., TERRELL, CHAPMAN, SEBRING and BARNS, JJ., concur.