The complainants, theatre owners and operators, are resisting the payment of excise taxes imposed on them by defendant, City of St. Petersburg. On May 17, 1949, we denied certiorari. 40 So.2d 458. The instant appeal is from a final decree on bill and answer accompanied by a stipulation of facts. The bill of complaint prays for declaratory decree to determine, (1) the constitutional validity of Ordinance 1104-B, imposing the excise taxes complained of. (2) An order restraining the City, its agents and employees, from collecting said taxes. The final decree granted the relief prayed for and the City appealed.
The City urges five grounds to reverse the chancellor but we have reached the conclusion that his decree should be affirmed because (1) the City was devoid of power to impose excise taxes and (2) if the City had power to impose an excise tax the amount imposed is unreasonable, confiscatory and void. It becomes unnecessary to discuss the other questions raised.
The rule is settled in this state that delegated corporate powers to a municipality, particularly grants of power out of the usual range that result in a public burden, or touch the right to liberty or property or the common-law right of the citizen, must be strictly construed. Any fair or reasonable doubts should be resolved against the exercise of the power by the City. State ex rel. Worley v. Lewis, 55 Fla. 570, 46 So. 630; State ex rel. Triay v. Burr, 79 Fla. 290, *Page 527 
84 So. 61; City of Pensacola v. Lawrence, 126 Fla. 830,171 So. 793; City of Miami v. Kayfetz, 158 Fla. 758, 30 So.2d 521.
Section 5, Article IX of the Constitution, F.S.A., provides that the legislature may authorize cities and towns to impose taxes for municipal purposes and for no other purpose. Sec. 3(c) Chapter 15505, Special Acts of 1931 Charter of the City of St. Petersburg, authorizes the City "to impose license taxes upon privileges, businesses, occupations and professions carried on and engaged in within the City; and the amount of such taxes shall not be dependent upon the general State revenue law." Section 167.43, F.S.A., has a similar provision with reference to the imposition of license taxes on businesses and professions.
The term "License taxes" has a well-settled connotation in legal terminology and has reference to a charge imposed for the privilege of engaging in a business or profession. Section 3(c), Chapter 15505, Acts of 1931, authorizing the City to impose a license tax, is the customary power granted to municipalities and has no provision extending that power to impose other taxes on similar subjects when deemed advisable by the City.
The act on which the ordinance in question is predicated clothes the city with nothing more than a general grant of power and under the cases last cited could not possibly be extended to a specific grant to impose an excise tax of the character described in the ordinance. The attributes of an excise tax of the kind complained of are materially different from the license tax named in the authorizing statute, and since the latter contains no words of general import extending the authority, we think the City was without power to impose the tax complained of.
The tax proposed by Ordinance 1104-B is a tax over and above the license tax authorized by the provisions of the City Charter and the Statutes heretofore quoted. It is out of the usual range of power conferred on the City and requires special legislative authorization. In other words, a specific grant of power to impose it. It certainly could not be comprehended in the authorization for a license tax. At the recent session of the legislature the City of St. Petersburg, as did many other cities, secured the passage of acts authorizing them to impose such a tax, but they were all vetoed by the Governor. It is pertinent to point out that the legislature of 1949, Chapter 26319, imposed a limited sales tax. It applies to theatre admissions of over 40 cents and was limited to three per cent. Any such power was denied to municipalities.
As to being arbitrary and unreasonable, the bill of complaint alleges that the license tax imposed on appellees for the year ending September 30, 1949 was increased from $775 to $2175 more than two hundred per cent, that in addition to this increase in its license taxes, Ordinance 1104-B imposed a tax of ten per cent on gross admission to appellees' theatres which was exclusive of the twenty per cent, Federal Admission tax. The City excise tax so imposed is required to be paid on or before the fifth day of each month and based on appellees gross receipts for the previous month, they will be required to pay a tax of approximately $94,000 or an increase of about 12000 per cent. It is further alleged that such an exaction is in excess of the net income of at least five of appellees' theatres and that as to the others, it would constitute such a drain on receipts as to discourage their operation. It is also alleged that no other business in St. Petersburg has such an exaction imposed on it. It further appears that when the city made up its budget for the fiscal year, beginning October 1, 1949, after all anticipated revenues were contemplated it was found that there would be a deficit of $1,240,000 in appropriations over income for the same period. The tax complained of was imposed to balance income and appropriations.
The facts alleged in the preceding paragraph are not denied. There are circumstances under which the budget would be a safe criterion for the City to spread the taxes. This is true so long as the tax is authorized and is reasonable. In this case the tax was not authorized and under the *Page 528 
facts stated it was wholly arbitrary, unreasonable and confiscatory. This court is committed to the doctrine that if a "tax is such that it impairs one's rights to engage in a lawful business * * * or tends to drive large numbers out of business, it will be stricken down." State ex rel. James v. Gerrell,137 Fla. 324, 188 So. 812, 813; Jerome H. Sheip Co. v. Amos,100 Fla. 863, 130 So. 699.
It requires no argument to convince one that a tax increase of more than twelve thousand per cent which takes more than the net earnings of the one on whom it is imposed, without recourse, is fatal for unreasonableness. No business can withstand such an imposition. The power to tax is not the power to destroy a legitimate business. The test of an excise tax is that which is just and reasonable, not that which the City demands to balance a budget. True it is not bound by the requirement of equality and uniformity, but that which is just and reasonable must be the end of the City's tether. Under the showing here it is not necessary to operate under the ordinance to show that the tax is confiscatory as was held in Woco Pep Co. of Montgomery v. City of Montgomery, 213 Ala. 452, 105 So. 214; Warrior Water Co. v. Long,218 Ala. 125, 117 So. 656 and like cases.
There is another principle implicit in the instant controversy which strongly supports this thesis. The profit system is still the basis of our economy. It contemplates a reasonable return to one possessed of the energy, ingenuity and the will to risk what he has in a legitimate enterprise. If all one's returns from a venture are to be funneled into the government till for taxes and subventions then the proprietor becomes a pawn of the State and we have a form of socialism no different from that we recently fought two wars to demonstrate that we did not want. When that form of socialism turns into an international conspiracy operated from some central point, then we have a form of communism no different from that we have been taught to reject. The Supreme Court of the United States and the State Courts of last resort have repeatedly held that it is one of the highest prerogatives we have to uphold sound democratic principles.
Affirmed.
ADAMS, C.J., and CHAPMAN, THOMAS, HOBSON and ROBERTS, JJ., concur.
SEBRING, J., not participating because of illness. *Page 634